767 F.2d 657
 Robert Carl ANTHONY, Plaintiff-Appellant,
v.
Daniel G. BAKER, individually and as Deputy Sheriff of the
County of El Paso, Colorado; Carl F. Newton, individually
and as an agent of the United States Bureau of Alcohol,
Tobacco and Firearms; Harold L. Davis, as Sheriff of El
Paso County, Colorado, Defendants-Appellees.
 Nos. 83-2678, 84-1893.
 United States Court of Appeals,
Tenth Circuit.
 June 17, 1985.
 
 Elvin L. Gentry of Elvin L. Gentry, P.C., Colorado Springs, Colo., for plaintiff-appellant.
 Nancy E. Rice (Asst. U.S. Atty.), Denver, Colo., for defendant-appellee Carl F. Newton.
 Phillip A. Vaglica of Hartley, Obernesser, Vaglica, Bailey & Robinson, P.C., Colorado Springs, Colo., for defendants-appellees Daniel G. Baker and Harold L. Davis.
 Before BARRETT, DOYLE and SEYMOUR, Circuit Judges.
 BARRETT, Circuit Judge.
 
 
 1
 In these consolidated appeals we will review three orders of the district court in which the court dismissed three defendants, granted a directed verdict on behalf of two defendants, and awarded defendants attorneys' fees under 42 U.S.C. Sec. 1988.
 
 
 2
 During September, 1980, Robert Carl Anthony (Anthony) was employed as the general manager of the Springs Motor Inn (Inn) in Colorado Springs, Colorado. As manager, Anthony resided at the Inn with his wife and daughter. On September 16, 1980, a serious fire occurred at the Inn, resulting in substantial damage to the Inn and its contents.
 
 
 3
 On the morning of the fire, Dan Baker (Baker), a detective in the El Paso County Sheriff's Department, conducted a fire scene investigation. During his investigation, Baker discovered that numerous fires had been set in and about the Inn. Baker also determined, based on the fire scene, that the fire was a "remodeling fire," i.e., a fire purposefully set for the purpose of obtaining money through insurance fraud.
 
 
 4
 Thereafter, Baker, with the assistance of Carl Newton, a Bureau of Alcohol, Tobacco and Firearms agent, conducted an extensive investigation into the fire. During the investigation, Baker and Newton interviewed numerous people, including the employees of the Inn. The employees of the Inn submitted to polygraph examinations. All the employees passed their polygraph examinations except Anthony. Anthony did pass subsequent examinations.
 
 
 5
 As the investigation proceeded, Baker received information indicating that false insurance claims were being submitted for the fire. At that juncture, Baker's investigation shifted from an arson investigation to an investigation for theft based on insurance fraud. Baker's investigation then concentrated on Anthony's potential involvement in the fire and related theft based on insurance fraud.
 
 
 6
 On April 27, 1981, Anthony was indicted by an El Paso County Grand Jury, for which Baker was appointed special investigator, for felony theft based on insurance fraud, i.e., unlawfully and feloniously taking a thing of value, worth $10,000 or more, from the two insurance companies which had paid on the claims for the fire. The indictment was returned after the Grand Jury, during the course of six sessions, heard the testimony of over twenty witnesses, including Anthony and Baker. The indictment was filed with Judge David Parrish of the El Paso County District Court, who, after concluding that the Grand Jury had probable cause to indict Anthony, nevertheless dismissed the indictment upon determining "that not all of the nine jurors who had voted for the indictment had been present at all the sessions where evidence was presented." (R., Vol. VIII at 14.)
 
 
 7
 Immediately thereafter, the district attorney's office for the Fourth Judicial District of Colorado filed a direct information charging Anthony with felony theft based on insurance fraud. Following a preliminary hearing, Judge Parrish found probable cause, and bound Anthony over for trial. After trial to the court, Anthony was found not guilty. At no time did the insurance companies which had paid the fire claims for the Inn file formal written complaints for fraud. (R., Vol. IV at 250.) Nor did Baker review the insurance policies to determine the coverage afforded the owners of the Inn.
 
 
 8
 Anthony subsequently filed this action under 42 U.S.C. Sec. 1983 for malicious prosecution and deprivation of his constitutional rights. The named defendants were Baker, Newton, Harold L. Davis, the sheriff of El Paso County (Sheriff), the County of El Paso (County) and the County Commissioners of El Paso County (Commissioners). Within his complaint Anthony alleged, inter alia, that: Baker and Newton conspired to deprive him of his constitutional rights by making him the target of their investigation, giving false information to the Grand Jury and covering up exculpatory information; and that the Sheriff, County and Commissioners were negligent in their supervision of Baker and failed to prevent the conspiracy between Baker and Newton which resulted in the deprivation of his constitutional rights.
 
 
 9
 Prior to trial the defendants moved to dismiss, or, in the alternative, for summary judgment. The district court denied Baker's and Newton's motions, but granted the motions of the Sheriff, County, and Commissioners. In so doing, the court found: Anthony's complaint "is based on the assertion that his being subject to an allegedly wrongful and malicious investigation and prosecution was so abusive to amount to a violation of due process" (R., Vol. I at 94); since Anthony has alleged that his prosecution was conducted with the intent to deprive him of a constitutionally protected right he must be allowed to present his evidence on this issue at trial, id.; Anthony has alleged sufficient facts which, if proved, would rebut the presumption that the prosecutors exercised independent judgment in filing the complaint against him; Anthony's complaint cannot be dismissed under the witness immunity holding of Briscoe v. LaHue, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983)[1], because Anthony has alleged other facts which fall outside the scope of the immunity defined therein; and that Anthony's action against the Sheriff, County, and Commissioners must be dismissed because of his failure to allege any facts supportive of his allegations of negligent failure to supervise Baker.
 
 
 10
 In dismissing the Sheriff, County, and Commissioners, the district court further observed that these defendants had presented affidavits and deposition excerpts supportive of their position that there was no failure to supervise and that Anthony had failed to come forth with counter-affidavits. The district court did exercise its discretion in retaining Anthony's pendent state claim of outrageous conduct against Baker and Newton, relying on its earlier determination that Anthony had stated a Sec. 1983 claim against Baker and Newton. As so structured, the case proceeded to trial.
 
 
 11
 After Baker had presented his case and rested, Baker and Newton moved for a directed verdict. Within its ruling granting Baker's and Newton's motions for a directed verdict, the district court found, inter alia: motions for a directed verdict at the conclusion of a plaintiff's case can only be granted when the court finds that under no circumstances could the jury infer from the facts presented any basis that would allow recovery by the plaintiff; under Sec. 1983 the acts of law enforcement officials leading to prosecution in state court can only be the basis of recovery when it clearly appears that those actions were taken with the intent to deprive the plaintiff of the valid exercise of a constitutional right or a clearly defined right under federal law; under our law and Constitution there is no guarantee that only the guilty will be prosecuted and "that's got to be the touchstone of this case"; it is only when police officers or others with prosecutorial authority act maliciously or recklessly for the purpose of depriving an individual of a federally protected right that those officers or prosecutorial officials are culpable; although Anthony's case is predicated on a series of facts and circumstances which are illustrative of improper conduct, "I see a demarcation in substance between both the investigation on the arson and the investigation of the theft charges" (R., Vol. XIII at 4); those critical of Baker's investigation "pointed to what might be described as negligence and not malicious behavior," id. at 5; none of the witnesses testified or even suggested that Baker was motivated by malice with the intent to deprive Anthony of a federally guaranteed right; Anthony did not meet his burden of establishing that Baker was motivated by a specific intent to deprive him of a federally guaranteed right; there are no facts, looking at the evidence in the light most favorable to Anthony, upon which a jury could infer that Baker (or Newton) acted maliciously to mislead the state trial judge, the state prosecutors, the Grand Jury or to deprive Anthony of his constitutionally guaranteed right to due process; nor does the evidence support Anthony's pendent state claim of outrageous conduct; under Harlowe v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), police officers are immune from liability for conduct performed within the scope of their official duties unless a plaintiff shows that the official knew or should have known his actions were violative of established constitutional or statutory principles; and there is simply no evidence of that as "fact and circumstances." (R., Vol. XIII at 8.)
 
 
 12
 After judgment was entered in favor of Baker and Newton, Baker, Sheriff, County and Commissioners filed a joint motion for attorneys' fees under 42 U.S.C. Sec. 1988. Within their motion, the defendants acknowledged that under Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), a prevailing defendant is entitled to attorneys' fees only if the plaintiff's underlying claim was "frivolous, unreasonable or groundless." The defendants argued:
 
 
 13
 [T]he Plaintiff never showed even the slightest evidence of willful or malicious conduct on the part of Defendant Baker. The evidence against said Defendant showed at best only errors of omission committed in the course of Detective Baker's investigation. All of these facts, considered together, show that the suit against the Defendants was frivolous, unreasonable, and groundless. (R., Vol. I at 116.)
 
 
 14
 In his response opposing the award of attorneys' fees, Anthony argued that: his action was not frivolous, and accordingly, the defendants were not entitled to attorneys' fees; an award of attorneys' fees to defendants would contravene the purposes of Secs. 1983 and 1988 and promote litigation, deter settlement, and foster dilatory tactics; defendants had failed to adequately comply with the guidelines of Ramos v. Lamm, 713 F.2d 546 (10th Cir.1983); and the defendants had requested costs which were not compensable.
 
 
 15
 Within its order granting defendants' motion for attorneys' fees, the district court found: "while it would clearly appear from the evidence produced in support of the complaint that the action was groundless, I cannot find any evidence that it was brought in bad faith" (R., Vol. I at 179); at present the standard enunciated in Christiansburg Garment Co. is the test for determining whether defendants are entitled to an award of attorneys' fees; in Shaw v. Neece, 727 F.2d 947 (10th Cir.1984), cert. denied, --- U.S. ----, 104 S.Ct. 2358, 80 L.Ed.2d 830 (1984), this Court applied the "groundless" test in reviewing the award of attorneys' fees in a Sec. 1983 case; this Court in Shaw v. Neece implicitly adopted the standard of Christiansburg Garment Co.; the evidence produced by Anthony, or perhaps more accurately, the lack of evidence, demonstrated that his claims were groundless; and therefore "despite the fact that I found that plaintiff did not litigate in bad faith, I find that under Christiansburg Garment Co., defendants are entitled to recover attorney fees from the plaintiff." (R., Vol. I at 180).
 
 
 16
 On appeal Anthony contends: (1) state and federal law enforcement officials are liable under Secs. 1983 and 1985(2) when they act maliciously to bring about an individual's trial or conviction; (2) the district court erred in granting Baker and Newton a directed verdict; (3) a county sheriff is liable for his failure to prevent his deputy's conspiracy to violate a citizen's civil rights and negligent failure to supervise such deputy; and (4) in order for a prevailing defendant to recover attorneys' fees in a Sec. 1983 action it must be shown that the plaintiff brought his action in bad faith.
 
 I.
 
 17
 Anthony contends that state and federal officers are liable under 42 U.S.C. Secs. 1983[2] and 1985(2)[3] when they conspire to procure groundless state indictments and charges against a citizen based upon fabricated evidence or false, distorted, perjurious testimony presented to official bodies in order to maliciously bring about a citizen's trial or conviction. Anthony argues, citing to Norton v. Liddel, 620 F.2d 1375 (10th Cir.1980), that whenever the misuse of the legal procedure is so egregious as to subject an individual to a deprivation of constitutional dimension and the tortfeasor is acting under color of law, Sec. 1983 may be employed for relief. Anthony further argues that the district court erred in finding that under Briscoe v. LaHue, supra, the testimony of the defendants before the Grand Jury or at his trial cannot form the basis of his Sec. 1983 claim.
 
 
 18
 Baker contends that under Briscoe v. LaHue, he has immunity for his testimony during Anthony's criminal prosecution in state district court. Baker also contends that not every violation of local law may be transformed into a constitutional tort because it was committed by a government agent under color of official authority, and that Anthony has failed to establish that he was deprived of his due process rights. Baker argues that "[t]he numerous determinations of probable cause by the grand jury and state trial judge in Anthony's criminal prosecution are conclusive evidence of the existence of probable cause and cause Plaintiff's claim, even if arguably based upon the statutory tort of malicious prosecution, to fail."[4]
 
 
 19
 We agree with Anthony's contention that state and federal officers are liable under Sec. 1983 and Sec. 1985(2) when they conspire to procure groundless state indictments and charges based upon fabricated evidence or false, distorted, perjurious testimony presented to official bodies in order to maliciously bring about a citizen's trial or conviction. Not every unfounded or malicious act, however, is actionable under Sec. 1983. In Norton v. Liddel, supra, 620 F.2d at 1378-79, we held:
 
 
 20
 We do not believe that the Fourteenth Amendment or the Civil Rights Act were designed to redress injuries incurred by reason of unfounded or malicious claims/suits brought in State court, where adequate State remedies are available to the aggrieved parties. Nevertheless, if the misuse of the legal procedure is so egregious as to subject the aggrieved individual to a deprivation of Constitutional dimension, and the tortfeasor is acting under color of State law, Sec. 1983 may be employed. See: Hampton v. Hanrahan, 600 F.2d 600, 630 (7th Cir.1979), cert. docketed (No. 79-912, December 11, 1979); Beker Phosphate Corporation v. Muirhead, 581 F.2d 1187 (5th Cir.1978) (Per curiam).
 
 
 21
 It must be emphasized that two elements must be pled and proven by a plaintiff to recover under Sec. 1983.
 
 
 22
 First, the plaintiff must prove that the defendant has deprived him of a right secured by the "Constitution and laws" of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." This second element requires that the plaintiff show that the defendant acted "under color of law." (Citations omitted.)
 
 
 23
 See also Lusby v. T.G. & Y. Stores, Inc., 749 F.2d 1423, 1431 (10th Cir.1984).
 
 
 24
 We also concur in Anthony's contention that, contrary to the district court's finding, Briscoe v. LaHue does not afford immunity for the testimony of the defendants before the Grand Jury. As Anthony points out, this very question was reserved by the Court:
 
 
 25
 The petition for writ of certiorari presents the following question: "Whether a police officer who commits perjury during a state court criminal trial should be granted absolute immunity from civil liability under 42 U.S.C. Sec. 1983." (Citation omitted.) The petition does not raise the question of immunity for testimony at pretrial proceedings such as probable cause hearings, nor does petitioners' brief discuss whether the same immunity considerations that apply to trial testimony also apply to testimony at probable cause hearings. We therefore do not decide whether respondent LaHue is entitled to absolute immunity for allegedly false testimony at two probable cause hearings regarding petitioner Briscoe.
 
 
 26
 460 U.S. 329 n. 5, 103 S.Ct. 1112 n. 5.
 
 
 27
 Baker's assertion that the "numerous determinations of probable cause by the grand jury and state trial judge ... are conclusive evidence of the existence of probable cause" (and hence, no denial of due process) begs the question. Anthony did present evidence upon which a jury could find that Baker's participation in the investigation and the Grand Jury proceedings so tainted the proceedings as to constitute "egregious conduct" and deny him his due process rights to a probable cause determination. (See R., Vol. VI, p. 4 et seq., testimony of Arnold Miller, expert in law enforcement investigation administration and a criminal justice specialist; R., Vol. V, p. 2 et seq., testimony of Det. Green, specifically, p. 12.)
 
 
 28
 In this regard, we believe the hesitancy with which the state court judge found that the State had established probable cause is noteworthy:
 
 
 29
 THE COURT: Thank you.
 
 
 30
 Having read all of the testimony presented to the Grand Jury, having heard all of the evidence that has been presented in this hearing, I am going to find that using the standards which have been set out for the Judge in a preliminary hearing, the People have met their burden.
 
 
 31
 I do so somewhat reluctantly, but I feel that the testimony of Linda Anderson as presented to the Grand Jury is such that it could be inferred that Mr. Anthony knew that he was submitting information to the insurance company that was not correct.
 
 
 32
 I am, as I say, reluctant to make this finding because what we have heard in the preliminary hearing, in my opinion, if that had all been presented to the Grand Jury they probably wouldn't have done what they did.
 
 
 33
 I didn't get a chance, of course, to see Linda Anderson, and if I had I wouldn't have been permitted to judge her credibility. But we've had Mr. Costlow testify that the insurance company didn't pay out any more than they would have been obligated to do. It seems to me that what we've gone through so far in this case is ask that the insurance adjustment be redone, and it looks like if it were redone that it would come out about the same anyway to me.... [H]owever, accepting the testimony of Linda Anderson in the light most favorable to the People, the Court will find that claims were made in excess of $10,000 for tables and chairs that the Court feels could possibly support the People's contention and the Information that is now on file in this court.
 
 
 34
 So I will find that the State has established probable cause at least on that basis and we will proceed at this time to any other matters that we can. (Emphasis supplied.)
 
 
 35
 (Pl.Ex. 22 at 11-13.)
 
 II.
 
 36
 Anthony contends that there was ample evidence before the jury from which it could reasonably conclude that the defendants had conspired to violate his civil rights and that, under such circumstance, the district court erred in granting defendants' motions for a directed verdict. We agree.
 
 
 37
 Baker responds, citing to Harlow v. Fitzgerald, supra, that he was entitled to a directed verdict based upon qualified immunity. In Harlow v. Fitzgerald, the Court replaced the previously recognized "subjective" aspect of qualified or "good faith" immunity for governmental officials. The "subjective" test was that such immunity is not available if the official asserting the defense took action with the malicious intention of causing a deprivation of constitutional rights or other injury. The new standard provides that officials performing discretionary functions are generally shielded from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known. The Court specifically stated:
 
 
 38
 [I]f the official pleading the defense [of immunity] claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained. But again, the defense would turn primarily on objective factors.
 
 
 39
 By defining the limits of qualified immunity essentially in objective terms, we provide no license to lawless conduct. The public interest in deterrence of unlawful conduct and in compensation of victims remains protected by a test that focuses on the objective legal reasonableness of an official's acts. Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action. But where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken "with independence and without fear of consequences." Pierson v. Ray, 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967). (Emphasis supplied.)
 
 
 40
 457 U.S. at 819, 102 S.Ct. at 2738.
 
 
 41
 Applying the Harlow v. Fitzgerald standard to the facts herein, and mindful that the standard for determining whether to grant a motion for a directed verdict is not whether there is literally no evidence to support the party opposing the motion, but rather whether there is evidence upon which a jury could properly find a verdict for that party, Brown v. McGraw-Edison Co., 736 F.2d 609 (10th Cir.1984), we must hold that the district court erred in granting Baker's motion for a directed verdict.
 
 
 42
 As set forth, supra, Baker embarked on an investigation for theft based on insurance fraud even though the companies that had insured the Inn and paid on the fire claims did not file any complaints. Whereas Baker's investigation, in the absence of a complaint from the insurance carriers, without more, would not strip him of the immunity afforded officials under Harlow v. Fitzgerald, we hold that the record contains sufficient evidence from which a jury could find that Baker's methods in carrying out the investigation constituted egregious conduct, under Lusby v. T.G. & Y. Stores, Inc., supra, outside the protective perimeters of Harlow v. Fitzgerald. Accordingly, we hold that the district court erred in granting defendants' motions for a directed verdict; we do not agree with the district court's finding that the record does not suggest by hint or indirection that Baker was motivated by malice and that Baker was entitled to immunity under Harlow v. Fitzgerald.
 
 
 43
 It is our view that the testimony of Detective Green, Arnold Miller and Sergeant Isham constituted evidence, which, if accepted by the jury, was sufficient to support a verdict in favor of Anthony. Detective Green, a deputy in the Sheriff's office and a personal friend of Baker, testified,[5] inter alia, that: in executing a search warrant in the State's case against Anthony, Baker seized the wrong piano under the warrant; Baker seized the piano even after he was notified that it was the wrong piano; Baker related words to the effect that he did not care if it was the wrong piano, that it was the piano he wanted; Baker stated words to the effect that he was going to get Anthony whatever it took; Green did not believe that Baker was being fair and objective in his investigation of Anthony; Baker reached a point of subjectivity where he could not tell the difference between Anthony's guilt or innocence; Baker became almost frantic about the Anthony case and was frantically pursuing Anthony; and in his ten years as an investigator he had never seen anything like Baker's investigation of Anthony.
 
 
 44
 Arnold Miller,[6] an expert in law enforcement investigation administration and a criminal justice specialist, testified, inter alia, that: the initial portion of the investigation was unprofessional and brought about some extremely misleading and erroneous conclusions; Baker utilized information from people who admittedly and obviously had a grudge against Anthony; Baker's conduct distorted the entire investigation; Baker's investigation was a continual, blatant, unrelenting effort both to accuse Anthony and ultimately to have him found guilty of a crime or crimes that he could not have been involved in; and Baker's efforts were made at virtually any cost.
 
 
 45
 Robert Isham, a former sergeant in the Sheriff's office, testified, inter alia, that: Baker had submitted an interdepartmental report to the Sheriff and other officers about his investigation into the fire and theft at the Inn which contained a lot of falsehoods; and Baker's report falsely stated that Isham and other officers conspired to have Anthony pass a polygraph examination.
 
 
 46
 This testimony, if accepted by the jury, clearly constituted evidence upon which the jury could have found in favor of Anthony. Thus, the district court erred in granting the defendants' motions for a directed verdict. Inherent within this determination is our view that the district court erred in finding that those critical of Baker "pointed to what might be described as negligence and not malicious behavior," supra. Although the Supreme Court in Baker v. McCollan, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), declined to consider under what circumstances, if any, simple negligence states a claim for relief under Sec. 1983, it has opined that a defendant's state of mind may be relevant in determining whether a constitutional violation has occurred:
 
 
 47
 Having been around this track once before in Procunier, supra, we have come to the conclusion that the question whether an allegation of simple negligence is sufficient to state a cause of action under Sec. 1983 is more elusive that it appears at first blush. It may well not be susceptible of a uniform answer across the entire spectrum of conceivable constitutional violations which might be the subject of a Sec. 1983 action. In any event, before the relationship between the defendant's state of mind and his liability under Sec. 1983 can be meaningfully explored, it is necessary to isolate the precise constitutional violation with which he is charged.
 
 
 48
 ....
 
 
 49
 The first inquiry in any Sec. 1983 suit, therefore, is whether the plaintiff has been deprived of a right "secured by the Constitution and laws." If there has been no such deprivation, the state of mind of the defendant is wholly immaterial.[1] We think that respondent has failed to satisfy this threshold requirement of Sec. 1983 and thus defer once again consideration of the question whether simple negligence can give rise to Sec. 1983 liability.
 
 
 50
 ....
 
 
 51
 443 U.S. at 139, 140, 99 S.Ct. at 2692.
 
 
 52
 Notwithstanding our holding that the district court erred in granting Baker's motion for a directed verdict, we hold that the district court did not err in directing a verdict for ATF Agent Newton. Unlike Baker, Newton did not testify before the Grand Jury, nor did he testify at the preliminary hearing or at trial. Although the record on appeal does establish that Newton worked with Baker in investigating the arson and suspected felony theft by insurance fraud, there is no evidence that Newton conspired with Baker to taint the probable cause determinations or that he proceeded in a malicious manner.
 
 III.
 
 53
 Anthony contends that a county sheriff is officially liable for his failure to prevent his deputy's conspiracy to violate a citizen's civil rights and for negligent failure to supervise him when, as here, the sheriff is statutorily responsible for the acts of his deputy.
 
 
 54
 We agree with Anthony's contention that a sheriff is accountable via a Sec. 1983 action whenever a sheriff, in a position of responsibility, knew or should have known of the misconduct, and yet failed to prevent future harm. See McClelland v. Facteau, 610 F.2d 693 (10th Cir.1979). Be that as it may, we hold that the district court did not abuse its discretion under Fed.R.Civ.P. 56(f) in denying Anthony's motion for reconsideration of the court's order dismissing the Sheriff.
 
 
 55
 Within its order denying Anthony's motion for reconsideration, the court specifically found:
 
 
 56
 [P]laintiff's additional exhibits submitted in support of his motion for reconsideration are not timely. Rule 56(f) provides for the procedure to be followed in the event that affidavits are unavailable. Plaintiff did not employ that procedure and has failed to show why the affidavits now submitted were unavailable at the time of briefing.
 
 
 57
 (R., Vol. I at 109.)
 
 
 58
 Anthony filed his original complaint on June 21, 1982, and an amended complaint on May 9, 1983. Defendants Baker, Sheriff, County and Commissioners moved to dismiss and for partial summary judgment on June 8, 1983. This motion was supported by a transcript of a state court proceeding before Judge Parrish and four affidavits. Anthony failed to respond to the motion with counter-affidavits. Approximately three months later on October 7, 1983, the district court entered an order dismissing Sheriff, County and Commissioners. Over three weeks later, on October 31, 1983, Anthony filed a motion for reconsideration supported by a Sheriff's office memorandum of December 10, 1981, and the affidavits of two former officers within the Sheriff's office.
 
 
 59
 Having carefully reviewed the memorandum and affidavits supportive of Anthony's motion for reconsideration, we hold that the district court did not err in finding that the materials supportive of Anthony's motion for reconsideration were not timely filed and that Anthony had failed to establish why the affidavits submitted were previously unavailable.
 
 IV.
 
 60
 Anthony contends that before a prevailing defendant in a Sec. 1983 action may recover attorneys' fees under Sec. 1988 it must be shown that the plaintiff brought the action in bad faith and that the district court's award of attorneys' fees to Baker, Sheriff, and County was in error. Good faith is not a special circumstance justifying the denial of attorneys' fees under Sec. 1988. Love v. Mayor, City of Cheyenne, 620 F.2d 235 (10th Cir.1980). In awarding attorneys' fees to Baker, the Sheriff, and the County, the district court properly relied on Shaw v. Neece, supra, in which we held that "[a] district court has the discretion to award a defendant attorneys' fees if the plaintiff's action is determined to be 'frivolous, unreasonable, or without foundation.' Prochaska v. Marcoux, 632 F.2d 848, 853-854 (10th Cir.1980), cert. denied, 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 841 (1981) (citing Christiansburg Garment Co. v. EEOC )." 727 F.2d at 949. A prevailing defendant in a Sec. 1983 action need not establish that a plaintiff proceeded in bad faith prior to recovering attorneys' fees; however, if a defendant establishes that the plaintiff proceeded in bad faith, there is a stronger basis for charging him with the attorneys' fees incurred by the defense. Christiansburg Garment Co. v. EEOC, supra 434 U.S. at 422, 98 S.Ct. at 700.
 
 
 61
 Although the district court utilized the correct standard for awarding defendants attorneys' fees, the award must be set aside in light of our holding that the district court erred in directing a verdict in favor of defendant Baker.
 
 
 62
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 Cited to but not included in 460 U.S
 
 
 [2]
 Sec. 1983 provides in part:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
 
 
 [3]
 Sec. 1985(2) provides in part:
 If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.
 
 
 [4]
 Brief for Daniel G. Baker, Harold L. Davis and the County of El Paso at 13
 
 
 [5]
 Detective Green's testimony is found in R., Vol. V at 2 et seq
 
 
 [6]
 Mr. Miller's testimony is found in R., Vol. VI at 4 et seq
 
 
 [1]
 Of course, the state of mind of the defendant may be relevant on the issue of whether a constitutional violation has occurred in the first place, quite apart from the issue of whether Sec. 1983 contains some additional qualification of that nature before a defendant may be held to respond in damages under its provisions