FILED
United States Court of Appeals
Tenth Circuit

February 26, 2010

Elisabeth A. Shumaker
Clerk of Court

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

ROBERT PAUL THORPE; MARIA
ELIZABETH THORPE,

      Plaintiff - Appellant,

v.

STANLEY ANCELL; JULIA
STOGSDILL; ROBERT RUSSELL;
CRAIG TYER; LISSAH NORCROSS;
DAVID WOOLEY, also known as Jesse
David Wooley; RIECKE CLAUSSEN;
JOHN C. JACKSON; ROBERT M.
CULVER; MARTYN CURRIE;
WILLIAM "BILL" GARDNER,

      Defendants - Appellees.

No. 06-1404
(D. Colo.)
(D.C. No. 03-cv-01181-LTB-BNB)

## ORDER AND JUDGMENT[*]

Before **MURPHY**, **HOLLOWAY**, and **O'BRIEN**, Circuit Judges.

Robert and Maria Thorpe (together "the Thorpes") filed a 42 U.S.C. § 1983

lawsuit claiming individuals from the Mesa County Sheriff's Department and the Grand

---

[*] This order and judgment is an unpublished decision, not binding precedent. 10th
Cir. R. 32.1(A).  Citation to unpublished decisions is not prohibited.  Fed. R. App. 32.1.
It is appropriate as it relates to law of the case, issue preclusion and claim preclusion.
Unpublished decisions may also be cited for their persuasive value.  10th Cir. R. 32.1(A).
Citation to an order and judgment must be accompanied by an appropriate parenthetical
notation – (unpublished).  *Id.*

Junction Police Department (collectively "Defendants") violated their constitutional rights during an investigation and malicious prosecution. After granting summary judgment in favor of the Defendants, the court ordered the Thorpes to pay attorneys' fees pursuant to 42 U.S.C. § 1988(b). The Thorpes appeal from the district court's order awarding fees. We affirm.

## I. FACTUAL BACKGROUND

The facts of this case are well-known to the parties and do not bear lengthy reiteration. In December 1998, a bank robbery investigation by Sheriff Deputies Lissah Norcross[1] and Craig Tyer led to information that a suspect may have paid for his bail bond with some of the robbery proceeds. A-1 Bail Bonds, a company owned and operated by the Thorpes, supplied the suspect's bond. Several informants claimed Heather Fish, an A-1 employee, knowingly accepted the bank robbery proceeds with permission from the Thorpes. Because the alleged transaction occurred in the city rather than the county, Tyer passed the information to the Grand Junction Police Department.

On October 27, 1999, Grand Junction Police Department Officers Stanley Ancell and Robert Culver interviewed Fish and two other A-1 employees, Sherri and Joe Green.[2] The three employees reported numerous criminal activities perpetrated by the Thorpes at

---

[1] In 1997, the Thorpes filed a separate § 1983 action against members of the Sheriff's Department including Norcross. The case was eventually dismissed but was pending during the bank robbery investigation.

[2] Shortly after November 1, 1999, either the Thorpes terminated Fish's employment with A-1 or Fish voluntarily resigned. Fish and Joe Green then started their own bail bond business which was operating at the time the Thorpes filed their complaint against Fish.

A-1, including forgery and the knowing receipt of a portion of the bank robbery money. While investigation of these allegations was proceeding, the Thorpes lodged a complaint against Fish for allegedly forging documents and stealing money from A-1. Police Officer Julie Stogsdill was assigned to conduct an investigation of these charges.[3] After interviewing the Thorpes and Fish, Stogsdill conducted a brief follow-up investigation and submitted her investigation report to the district attorney's office. The district attorney's office declined to prosecute Fish. However, the investigation of the Thorpes resulted in search and arrest warrants issued on June 7, 2000, and criminal charges filed on June 15, 2000.[4] A second set of search warrants issued on June 23, 2000.

In August 2000, the district attorney's office asked Gilbert Stone, its lead investigator, to review and comment on the Thorpes' investigation file to determine the likelihood of conviction. Stone issued a report ("the Stone Report") criticizing the investigation.

Special Prosecutor David Waite was assigned to the case in October 2000.[5] He was given the voluminous investigation file. In January 2001, Waite decided to dismiss

---

[3] Officers Ancell and Culver were not a part of Stogsdill's investigation, although each knew of the other's investigation.

[4] The Thorpes were charged with, *inter alia*, motor vehicle theft, theft over $15,000, attempt to influence a public servant, theft by receiving (the bank robbery money) and conspiracy to commit these offenses. Maria Thorpe was also charged with burglary.

[5] The Thorpes had filed a motion to appoint a special prosecutor and to recuse the Mesa County District Attorney's Office because some of its employees were potential witnesses.

the Thorpes' case without prejudice because he needed more time to review the police reports and conduct his own investigation. Waite refiled the charges in June 2001, but the charging document for Robert Thorpe, attested to by Culver, mistakenly included charges intended only for Maria Thorpe. Those charges were dropped as soon as the error was discovered. Shortly after the criminal charges were refiled, the state court ordered the charges be tried separately. Due to that decision and his concern over having to prove each of the charges beyond a reasonable doubt in separate trials (although he believed probable cause existed for the Thorpes' arrests on each of the charges filed against them), Waite decided to dismiss the charges with prejudice. They were dismissed on June 27, 2002.

## II.    PROCEDURAL BACKGROUND

One year later, the Thorpes filed the current lawsuit pursuant to 42 U.S.C. § 1983 against Mesa County Sheriff Riecke Claussen, Undersheriff David Wooley, and Deputies Tyer, Norcross and William Gardner (Sheriff Defendants) and the City of Grand Junction, the Grand Junction Police Department, Police Chief Martyn Currie and Officers Ancell, Culver, Stogsdill, Robert Russell and John Jackson (Police Defendants).[6] The Thorpes alleged Defendants denied them numerous constitutional rights and claimed several state law violations. The factual basis of their complaint covered miscellaneous events from 1999 through 2002, but was primarily based on the investigation and

---

[6] The complaint also named the Mesa County Sheriff's Department and the Mesa County Board of Commissioners. Sheriff Defendants filed a motion to dismiss these defendants; the Thorpes did not object. The district court granted the motion.

prosecution of the criminal charges against them.

Police Defendants filed a motion for a more definite statement. Attached to their motion were the Thorpes' arrest and search warrants and supporting affidavits. Sheriff Defendants filed a motion to dismiss the state law claims for lack of subject matter jurisdiction based on the Thorpes' failure to comply with the requirements of the Colorado Governmental Immunity Act. They attached the affidavits of Sheriff Claussen, Undersheriff Wooley and Deputies Gardner, Norcross and Tyer. Claussen, Wooley and Gardner stated they had no connection with the police investigation of the Thorpes or their prosecution; Deputies Norcross and Tyer testified they ended their involvement in the bank robbery investigation in 1999 or 2000 when they turned the case over to the Grand Junction Police Department. The Sheriff Defendants also filed a motion to dismiss the malicious prosecution claim for failure to state a claim or in the alternative for a more definite statement. The district court granted the motions for a more definite statement but denied, without prejudice, Sheriff Defendants' motions to dismiss.

The Thorpes filed their First Amended Complaint on March 29, 2004, alleging Defendants "unlawfully caused [them] to be wrongly investigated, charged, arrested and prosecuted based upon information known to be false . . . . Defendants failed to investigate the veracity of [the] allegations against [them], subjected [them] to illegal searches and seizures, harassed [them] and falsified evidence against them." (R. Vol. I at 34-35.) Some of the factual allegations were astounding. For example, the Thorpes alleged Fish was a known prostitute and known to have made false allegations in the past. The Thorpes claimed the Defendants enlisted Fish to seduce their sixteen–year-old son

for the purpose of obtaining A-1's business records without a warrant. They also claimed the actions of law enforcement caused their son's suicide in May 2000. The Thorpes alleged Defendants manufactured, altered and destroyed evidence, affirmatively sought out parties to assert false complaints against them and continued to prosecute them despite knowing the charges were false. They further alleged Defendants illegally searched their home after their son's death, communicated false information to state agencies to destroy the Thorpes' business and intentionally misstated facts to the media.

A second round of motions to dismiss ensued. On February 11, 2005, the district court dismissed the state law claims against Defendants in their official capacities. It also dismissed the claims against the City of Grand Junction and its police department. Therefore, only the federal claims against Defendants in their individual capacities remained.

A.    Summary Judgment

After completing discovery, Defendants filed motions for summary judgment. The court granted these motions on May 1, 2006. It noted the Thorpes were relentless in their "spurious assertions" which were supported only by "misrepresentations and exaggerations" of the record. (R. Vol. 5 at 725.) It determined the undisputed evidence revealed the Sheriff Defendants had no connection to the Thorpes' prosecution and were involved only in the bank robbery investigation (as attested to in their affidavits). It also concluded the Thorpes had failed to present any evidence demonstrating the Police Defendants altered or falsified evidence during the investigation and prosecution. The court found the affidavits supporting the arrest and search warrants demonstrated

- 6 -

probable cause for the issuance of the warrants. There was no evidence Ancell or Culver included in the affidavits any false information or that any omissions were intentionally or recklessly made. While the court acknowledged the 2002 charging document against Robert Thorpe contained erroneous charges, the mistake was clearly inadvertent and immediately remedied upon its discovery. There was no factual support for the allegations that Fish was "a known prostitute" or that the investigation was connected in any way to the suicide of the Thorpes' son. Nonetheless, the Thorpes had never withdrawn any of these sensational accusations even though there was no factual basis to support them.

The district court *sua sponte* ordered the Thorpes' counsel to show cause why it should not order him or the Thorpes to pay Defendants' attorneys' fees under 42 U.S.C. § 1988(b).

B.      Motions for Attorneys' Fees

The Thorpes' attorney filed a motion to withdraw as counsel and a response to the order to show cause on his own behalf, alleging the Thorpes had assured him of the verity of their claims and he only intended to zealously represent his clients. The Thorpes retained different counsel, who filed a response to the order to show cause on their behalf. In their response to the order to show cause, the Thorpes asserted the summary judgment result was not due to the lack of evidence but solely to their attorney's mishandling of the case. They averred their lawyer had not presented critical evidence in the summary judgment response but, had he done so, the result of Defendants' motions for summary judgment would have been different. They argued they had not seen the

pleadings before the order to show cause but relied on their attorney to handle their claims. Nonetheless, the Thorpes did not disavow any of the allegations.

Sheriff Defendants filed a motion seeking $65,060 in attorneys' fees for their defense of the Thorpes' federal claims commencing on August 11, 2003, the day after the Thorpes received the affidavits attached to the Sheriff Defendants' first motion to dismiss. Police Defendants also moved for $88,392.50 in attorneys' fees commencing on February 11, 2005, the day the district court dismissed the Thorpes' state law claims.

In response to the Defendants' specific requests for attorneys' fees, the Thorpes again blamed their former attorney for failing to present evidence. Attached to the response were more than one hundred pages of exhibits primarily attacking the veracity of the individual Defendants.[7] The Thorpes relied on the Stone Report to demonstrate their lawsuit was not frivolous. They also continued to insist deliberate fabrications and omissions in the affidavits supporting the arrest and search warrants vitiated probable cause.

Unconvinced, the district court ordered the Thorpes to pay the fees requested by Defendants pursuant to 42 U.S.C. § 1988(b).[8]

---

[7] The exhibits included material from the personnel files of Tyer, Ancell, and Culver. They also included a letter from Currie to Waite inquiring whether Waite was going forward with the prosecution.

[8] Pursuant to 28 U.S.C. § 1927, the court held the Thorpes' original attorney jointly liable for the fees incurred after Defendants filed their motions for summary judgment. The attorney filed a separate appeal (No. 06-1405) but the appeal was withdrawn following an agreement with Defendants.

## III.     DISCUSSION

"[T]he decision to award or deny attorney's fees lies within the sound discretion of the court, and, on appeal, review is subject to an abuse of discretion standard." *Goichman v. City of Aspen*, 859 F.2d 1466, 1471 (10th Cir. 1988).  "This standard of review applies to both the court's decision to award fees in the first place and the court's determination of the amount of fees to be awarded." *Robinson v. City of Edmond*, 160 F.3d 1275, 1280 (10th Cir. 1998).  An abuse of discretion standard "is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983).

Under 42 U.S.C. § 1988(b), "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" in an action to enforce civil rights.  While courts apply this provision liberally to prevailing plaintiffs, the Supreme Court has imposed a different standard for awarding attorneys' fees to prevailing defendants in civil rights cases.  *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417, 421 (1978).[9]  "[A] plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so."  *Id.* at

---

[9] *Christiansburg* addressed the standard applicable to the attorneys' fee provision of Title VII of the Civil Rights Act of 1964.  *See* 42 U.S.C. § 2000e-5(k).  However, that provision is virtually identical to § 1988(b) and the Supreme Court has applied the *Christianburg* standard to cases in which a defendant seeks fees under § 1988(b).  *See Hensley*, 461 U.S. at 429 n.2; *Hughes v. Rowe*, 449 U.S. 5, 14-15 (1980).

422; *see also Hensley*, 461 U.S. at 429 n.2 ("A prevailing defendant may recover an attorney's fee only where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant."). A frivolous suit is one "based on an indisputably meritless legal theory, . . . [or] whose factual contentions are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). However, the court need not find the lawsuit was "brought in subjective bad faith" to award fees to a prevailing defendant. *Christianburg*, 434 U.S. at 421. "A defendant can recover if the plaintiff violates this standard *at any point during the litigation*, not just at its inception." *Galen v. County of Los Angeles*, 477 F.3d 652, 666 (9th Cir. 2007) (emphasis added); *see also Munson v. Milwaukee Bd. of Sch. Dirs.*, 969 F.2d 266, 271 (7th Cir. 1992) ("It is possible for an initially nonfrivolous action to become frivolous when, for example, the factual basis supporting the complaint is shown to be groundless during discovery.").

Rarely will a case be sufficiently frivolous to justify imposing attorneys' fees on the plaintiff. *See Clajon Prod. Corp. v. Petera*, 70 F.3d 1566, 1581 (10th Cir. 1995) (only in "rare circumstances" will "a suit [be] truly frivolous so as to warrant an award of attorneys' fees to the defendant"). In determining whether a claim is frivolous, unreasonable or groundless, a district court must avoid "*post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg,* 434 U.S. at 421-22. Dismissal of claims at the motion to dismiss or summary judgment stage does not automatically warrant a fee award. *See Jane L. v. Bangerter*, 61 F.3d 1505, 1513-14 (10th Cir. 1995).

A.     Statute of Limitations

Section 1983 provides a federal civil cause of action against state officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. State law governs statute of limitations issues in § 1983 actions and "that limitation period is set by the personal injury statute in the state where the cause of action accrues." *See Roberts v. Barreras*, 484 F.3d 1236, 1238, 1240 (10th Cir. 2007). The limitations period for a personal injury action in Colorado is two years. *See* Colo. Rev. Stat. § 13-80-102; *Workman v. Jordan*, 32 F.3d 475, 482 (10th Cir. 1994). Federal law governs when a civil rights claim accrues for purposes of the statute of limitations. *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995). "A civil rights action accrues when facts that would support a cause of action are or should be apparent." *Id.* (quotations omitted).

The Thorpes filed their original complaint on June 26, 2003. Therefore, the statute of limitations would have run on all of their claims occurring prior to June 26, 2001. The only activity after June 26, 2001, was the final dismissal of criminal charges. Thus, the only claim not barred by the statute of limitations was based on allegations of malicious prosecution. *See Mondragon v. Thompson*, 519 F.3d 1078, 1083 (10th Cir. 2008) ("[A] due process claim for malicious prosecution arises only once the original action, whatever form it has taken, has been terminated in favor of the plaintiff. Because the statute of limitations does not start running before the elements of a claim are satisfied, the statute of limitations for this due process claim cannot start until the plaintiff has achieved a favorable result in the original action.") (citation and quotations omitted).

- 11 -

Even so, the Thorpes' First Amended Complaint continued to claim Fourth, Eighth and Fourteenth Amendment violations for unreasonable search and seizure. These claims were obviously without merit and should have been withdrawn.

B.      Malicious Prosecution

A § 1983 malicious prosecution claim requires the following elements: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Novitsky v. City of Aurora*, 491 F.3d 1244, 1258 (10th Cir. 2007). The district court held that the affidavits attached to the Sheriff Defendants' motion to dismiss the original complaint negated any factual basis to allege the Sheriff Defendants caused the Thorpes' prosecution. Similarly, the affidavits in support of the requests for the search and arrest warrants established probable cause.

As the district court noted, the Sheriff Defendants' supporting affidavits to their first motion to dismiss refuted any involvement with the police department's investigation of the Thorpes or the district attorney's decision to pursue a criminal prosecution. The Thorpes disagree, relying on the following statement in Stone's report to support their contention that the claims against the Sheriff's Defendants were not frivolous:

> Might there not be some history between the Thorpes, the Mesa County
> Sheriff's Department (who the Thorpes were suing for violations of their
> civil rights) and Heather Fish that might cause Robert Thorpe to distrust
> Fish (a former Sheriff's Department's "booking tech." in the jail), Patton
> and Tyer?? In reality, Fish was a police snitch, Patton was a bank robber . .

- 12 -

> . and [t]he Mesa County Sheriff's Department was being sued by the Thorpes for two million dollars for an alleged bad search warrant on A-1. Would you trust these players?! Would a logical person not ask themselves, "Wait a minute! This stinks! Could the Sheriff's Department be trying to set me up?"

(R. Vol. IV at 507.) To be sure, Stone's speculations provide support for the Thorpe's original suspicions of wrongdoing. But the disclosure of these speculations did not motivate the Thorpes to depose any of the Sheriff Defendants in order to provide a factual basis for Stone's flights of fancy. While Stone reiterated some of the same suspicions at his deposition, he did not testify he believed any of the Sheriff Defendants had violated the Thorpes' rights nor did he refute the Sheriff Defendants' sworn affidavits provided to the Thorpes in response to their original complaint.

The district court also held the affidavits in support of the Police Defendants' requests for search and arrest warrants established probable cause, thus negating any claim for malicious prosecution. The law is well-settled: a constitutional violation exists only when an affidavit contains information that is deliberately false or in reckless disregard for the truth *and* the remaining material contains insufficient content to support a finding of probable cause. *See Franks v. Delaware*, 438 U.S. 154, 171-72 (1978).

The Thorpes' steadfast refusal to accept the district court's conclusion is notable in the absence of any appeal of the court's grant of summary judgment. Instead, they argue attorneys' fees are unwarranted because Ancell and Culver deliberately presented false statements when they averred the information in the affidavits was given by "reliable" citizens (Fish, the Greens and the bank robber). (R. Supp. Vol. I at 25, 40.) The Thorpes claim because Ancell and Culver knew these witnesses had a motivation to falsely accuse

the Thorpes, the officers did not rely on information from "reliable" citizens. Rather, they knowingly relied on material misrepresentations by unreliable witnesses. The Thorpes maintain a judicial officer would not find probable cause for their arrests had the officers revealed the known motivations of these witnesses to fabricate evidence.

The district court correctly rejected this argument because the relationship of these witnesses to the Thorpes was set forth in the officers' affidavits. Moreover, contrary to the Thorpes' repeated assertions, the affidavits do not premise probable cause solely on these witnesses' credibility.[10] Allegations concerning the bank robbery money (*i.e.*, the theft by receiving charges) were corroborated by another witness and the Thorpes' own statements made while Fish was wearing a wire; the motor vehicle theft charges were corroborated by computer checks regarding property ownership, interviews with the victim and his girlfriend, and copies of the towing charges. The theft of over $15,000 charges were instigated by a telephone call from the Colorado Department of Insurance followed by interviews with A-1's insurance company and the victims; the attempt to influence a public servant charges were also initiated by the Colorado Department of Insurance and followed up by telephone calls to agencies the Thorpes listed as former employers on their resumes to obtain a license to instruct a bondsman class. Burglary charges against Maria Thorpe were corroborated by an interview with the homeowner

---

[10] This is not to say their credibility would be unimportant to a finding of guilt beyond a reasonable doubt. But "[p]robable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime." *See Bruner v. Baker*, 506 F.3d 1021, 1026 (10th Cir. 2007) (quotations omitted).

- 14 -

and a witness, as well as the homeowner's identification of the allegedly stolen documents. The Thorpes do not allege any of this supporting information was false; they merely claim the investigation was not thorough enough. Thus, even if all the statements by Fish and the Greens are eliminated, the Thorpes could not reasonably believe the remaining information in the affidavits failed to establish probable cause for their arrests.

The Thorpes also complain Culver knowingly misrepresented or showed reckless disregard for the truth when he attested to the June 2001 charging document for Robert Thorpe which contained erroneous charges. Culver admitted he probably did not read the charges written by the prosecutor before he signed the document. However, there was no evidence inferring the oversight was deliberate. "Allegations of negligence or innocent mistake are insufficient" to sustain a claim for a constitutional violation; misrepresentations must be deliberate or in reckless disregard of the facts. *Franks*, 438 U.S. at 171.

Finally, the Thorpes argue the Stone Report justified the lawsuit against the Police Defendants because Stone concluded a logical person could believe the Thorpes were being "set . . . up" by law enforcement. (R. Vol. IV at 507.) They rely on our decision in *Anthony v. Baker*, 767 F.2d 657 (10th Cir. 1985), wherein Anthony was charged for insurance fraud following a fire at the motel where he was a manager. He was subsequently tried and found not guilty. Anthony then filed suit under 42 U.S.C. § 1983 for malicious prosecution and deprivation of his constitutional rights. Anthony alleged, *inter alia,* that two investigators, Baker and Newton, "conspired to deprive him of his constitutional rights by making him the target of their investigation, giving false

information to the Grand Jury and covering up exculpatory information." *Id.* at 660. The case against the investigators went to trial. After Baker had presented his case and rested, Baker and Newton moved for and were granted a directed verdict. The court subsequently awarded them their attorneys' fees. We reversed, finding the court erred in granting a directed verdict based on the following evidence:

> Detective Green, a deputy in the Sheriff's office and a personal friend of Baker, testified . . . Baker seized the wrong piano under [a] warrant . . . even after he was notified that it was the wrong piano [and] . . . that he did not care if it was the wrong piano . . .; Baker stated words to the effect that he was going to get Anthony whatever it took; . . . Baker reached a point of subjectivity where he could not tell the difference between Anthony's guilt or innocence; Baker became almost frantic about the Anthony case and was frantically pursuing Anthony; and in his ten years as an investigator he had never seen anything like Baker's investigation of Anthony.

> Arnold Miller, an expert in law enforcement investigation administration and a criminal justice specialist, testified . . . Baker's investigation was a continual, blatant, unrelenting effort both to accuse Anthony and ultimately to have him found guilty of a crime or crimes that he could not have been involved in; and Baker's efforts were made at virtually any cost.

> Robert Isham, a former sergeant in the Sheriff's office, testified . . . Baker had submitted an interdepartmental report to the Sheriff and other officers about his investigation into the fire and theft at the Inn which contained a lot of falsehoods; and Baker's report falsely stated that Isham and other officers conspired to have Anthony pass a polygraph examination.

*Id.* at 665 (footnotes omitted).

The testimony in *Anthony* is easily distinguished from Stone's second-hand ruminations. Even assuming it was somehow admissible and recognizing that it is critical of Defendants' investigations, the Stone report did not state anyone knowingly violated the law, misrepresented information or that the officers arrested the Thorpes without

- 16 -

probable cause.  Where probable cause exists, the subjective intent of the officer in effectuating an arrest is irrelevant.  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  The fact Ancell and Culver conducted a vigorous investigation or that law enforcement hoped for a successful prosecution is not a constitutional violation.

The Thorpes also argue they should not be punished for their attorney's decisions and, in any event, they should not be sanctioned more severely.  While the Thorpes may wish to blame their attorney for continuing the suit after it was proven to be without merit, "there is certainly nothing novel about holding clients responsible for the conduct of their attorneys, even conduct they did not know about." *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1245 n.12 (10th Cir. 2007) (quotations omitted) (affirming dismissal under Rule 41(b) of the Federal Rules of Civil Procedure).  Moreover, the Thorpes' unsupported and sensational factual allegations were certainly not created out of whole cloth by their attorney.

In sum, there was no evidence supporting the Thorpes' claims that Defendants fabricated evidence; no evidence they "use[d] as their agents, persons of questionable veracity" and "known moral t[u]rpitude" to " seduce or solicit[] minor children to violate the constitutional rights of others" causing the suicide of a minor child; no evidence of the knowing falsification of any document; no evidence any Defendant "cultivat[ed] false testimony" in exchange for a reduction of sentence; no evidence of threats; no evidence any Defendant supplied false information to a state agency; no evidence of "conspiratorial meetings"; and no evidence any Defendant "placed anonymous false entries . . . into the [Thorpes'] criminal file[s]" to be viewed by the press.  (R. Vol. I at

36, 46-47, 49.) Despite the fact that the statute of limitations had run on their claims for false arrest, unconstitutional searches, unconstitutional seizures, defamation, intentional interference with business and intentional infliction of emotional distress, none of these claims were omitted from the amended complaint nor were these allegations voluntarily removed or withdrawn prior to the time summary judgment issued. The Thorpes failed to take any depositions of the Sheriff Defendants after receiving their sworn affidavits stating they did not participate in the investigation leading to the Thorpes' arrests. Rather than seeking the facts, the Thorpes obviously intended to rely on Stone's speculations to support their own view of events. Similarly, despite the fact the affidavits in support of the search and arrest warrants contained sufficient statements of probable cause supported and corroborated by several avenues of evidence, the Thorpes do not budge from their conviction that Ancell and Culver somehow did something to violate their rights.

The district court noted that throughout the proceedings the Thorpes played fast and loose with the record in supporting their arguments to the point some assertions were flatly contradicted by the undisputed facts. At the time of the Thorpes' response to the order to show cause, they still did not concede their claims were frivolous but, instead, submitted pages of documents irrelevant to this case in an attempt to challenge the credibility of opposing parties.

*Christiansburg* did not provide precise guidance on the amount of evidence the plaintiff must produce to avoid an adverse award of fees. However, the district court found not only that the Thorpes' claims were frivolous but that "courts are not proper

- 18 -

fora for publication of fantastic allegations of the sort that the Thorpes concocted in their complaint." (R. Vol. IX at 1146.) These findings are more than sufficient to justify the award of fees to Defendants.

The Thorpes argue the district court abused its discretion because it awarded attorney's fees to compensate Defendants rather than award the least amount necessary to deter the filing of frivolous lawsuits. They claim because their "reasonable belief they were treated unlawfully by Defendants . . . justified . . .their complaint" and, in any event, "a much smaller amount . . .would suffice as a deterrent." (Appellants' Br. at 44-45.) While *Christiansburg* makes clear the award of attorney's fees to a defendant are not routine, this is not a case where the Thorpes are being "punished for [their] failure to recognize subtle factual or legal deficiencies in [their] claims." *Hughes*, 449 U.S. at 15. "[T]he same judge who presided over all proceedings also determined the fee award. Thus, that judge was particularly well qualified to make the partially subjective findings necessary for an award of attorney's fees." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 503 (3d Cir. 1991) (quotations and alterations omitted).

The award of fees in a § 1983 case does not merely provide some compensation to the defendants for costs incurred in defending a suit but also deters a plaintiff from filing patently frivolous and groundless suits. The court "consider[ed] the . . . plaintiff[s'] ability to recognize the objective merit" of their allegations and "provide[d] a concise [and] clear explanation of its reasons for the fee award." *Houston v. Norton*, 215 F.3d 1172, 1175 (10th Cir. 2000) (quotations omitted). The district court concluded the Thorpes' claims were not only frivolous but the "fantastic" factual allegations contained

- 19 -

in the complaint were improperly "concocted" to be publicized in judicial proceedings. Indeed, the Thorpes have yet to retract the allegations or even address this transgression. What will deter any particular plaintiff is uniquely within the trial court's expertise after becoming familiar with the parties through the course of the proceedings. Because the district court offered sound reasons to conclude the Thorpes' action was frivolous and to substantiate its decision on fees, we will affirm.

**AFFIRMED.**

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge