FILED
United States Court of Appeals
Tenth Circuit

**March 10, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CHRISTOPHER MONDRAGÓN,

      Plaintiff-Appellant,

    v.

JAMES WILLIAM THOMPSON and
JOSÉ LEON FLORES,

      Defendants-Appellees.

No. 06-2358

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. CIV-05-1037 RLP/LFG)**

---

Dennis W. Montoya, Montoya Law, Inc., Rio Rancho, New Mexico, for Plaintiff-Appellant.

Luis Robles, Robles, Rael & Anaya, P.C., Albuquerque, New Mexico, for Defendants-Appellees.

---

Before **McCONNELL**, **BALDOCK**, and **GORSUCH**, Circuit Judges.

---

**McCONNELL**, Circuit Judge.

---

      Christopher Mondragón claims that Officer James Thompson forged an arrest warrant and illegally imprisoned him in New Mexico for three months. He filed suit against Officer Thompson and his supervisor exactly three years (the

length of the statute of limitations) after he was released on a state writ of habeas corpus. The district court dismissed this suit as untimely, concluding that any constitutional claims Mr. Mondragón had must have accrued sometime before he was released from jail. We conclude that this is not necessarily so. After the district court's decision, but before briefing and argument, the Supreme Court handed down its decision in *Wallace v. Kato*, 127 S. Ct. 1091 (2007), which clarifies (and perhaps even changes) the law in this area. In their briefs, the parties did not address *Wallace*, nor did they discuss this Court's decision in *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004), which is also relevant. We vacate the district court's decision and remand the case for a determination under these, and any other relevant, precedents.

## I. BACKGROUND

We confront this case because the district court granted a motion for summary judgment, which had been converted from a motion to dismiss by reference to documents outside the pleadings. Most of the facts are undisputed. According to the complaint, Edward Catanach, an employee of the New Mexico Department of Corrections, and Mr. Mondragón "had a history of interpersonal tension between them as the result of Catanach's being the father of a daughter from an earlier relationship with Plaintiff's wife, Diana Mondragón." App. 9. Mr. Catanach claimed (falsely) that his daughter had been abused by Mr. Mondragón and convinced a co-worker, Officer Thompson, to concoct an arrest

warrant for Mr. Mondragón by forging the signature of his supervisor, José Flores. On the basis of this forged warrant, Mr. Mondragón was jailed for approximately three months, starting June 26, 2002.[1] During this time, Officer Thompson apparently communicated with state courts in both New Mexico and Texas, telling the New Mexico courts (falsely) that Texas had an arrest warrant for Mr. Mondragón, and attempting to get the Texas courts to issue one by telling them (falsely) that Mr. Mondragón had been convicted of child molestation in New Mexico. It is not clear why Texas was involved, nor why Officer Thompson thought a second warrant was needed when Mr. Mondragón was already in jail, and he apparently did not procure one.

At some point in mid-August 2002, Officer Thompson appeared at some sort of hearing in New Mexico court relevant to Mr. Mondragón's detention. The record does not reveal—and neither party was able to tell us at oral argument—what kind of hearing this was, what its legal basis was, or who was present. In any event, that hearing did not result in Mr. Mondragón's release. Eventually, on September 16, 2002, he filed a petition in state court for a writ of habeas corpus. On September 25, the writ was granted and he was released from jail.

---

[1] The record contains a New Mexico "booking authority form," signed by Officer Thompson, that suggests that Mr. Mondragón was accused of a probation violation. App. 51 (citing N.M. Stat. § 31-21-15).

On September 26, 2005, Mr. Mondragón sued Officer Thompson and his supervisor, José Flores, under 42 U.S.C. § 1983, alleging "wrongful detention" that "was unlawful, unnecessary, in excess of all authority granted or delegated to the Defendants, and effected a deprivation upon the Plaintiff of rights and privileges secured to him by the Constitution and laws of the United States of America." App. 10–11. The complaint did not specify which laws or which provisions of the Constitution were violated. The statute of limitations for § 1983 claims in New Mexico is three years, and because September 25, 2005 was a Sunday, Mr. Mondragón's filing is deemed to be within three years of his release date. Fed. R. Civ. P. 6(a)(3).[2]

At this stage of the litigation the defendants do not dispute these facts, nor dispute that if they are true Mr. Mondragón's constitutional rights were violated. However, they argue that his claim was not filed within the statute of limitations because all of his constitutional claims accrued sometime before he was released from jail. The district court agreed, and dismissed Mr. Mondragón's suit as untimely. Taking the undisputed facts as true and considering them in light of the Supreme Court's decision in *Wallace v. Kato*, 127 S. Ct. 1091 (2007) and our decision in *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004), we conclude that

---

[2] At oral argument, Officer Thompson's lawyer raised for the first time the possibility that Sunday filing in § 1983 claims might be governed by state law, and that New Mexico's rule might be less generous than the federal one. We do not address arguments, or even intimations of the possibility of an argument, first raised this late in the appeal.

at least part and possibly all of Mr. Mondragón's suit is likely to be timely, but that the record is inadequate for us to make a determination.

## II. ANALYSIS

### A. Appellate Jurisdiction

At the outset, we must determine whether we have jurisdiction to hear this appeal. The district court's opinion dismissing Mr. Mondragón's claims was issued on June 13, 2006, and the notice of appeal was not filed until December 4, 2006. A party has only thirty days after the entry of a final judgment against him to appeal. Fed. R. App. P. 4(a)(1)(A). Thus, argues Officer Thompson, the appeal is too late and the case is closed.

This argument confuses an opinion with a judgment. The formalism of the Federal Rules of Civil Procedure requires every judgment (with exceptions not relevant here) to be "set out in a separate document," not made part of the opinion and order. Fed. R. Civ. P. 58(a). If this rule is not obeyed, the judgment is entered by legal fiction 150 days after the issuance of the opinion it should have accompanied. Fed. R. Civ. P. 58(c)(2)(B). The 30-day time limit for filing a notice of appeal begins only after that later date. In Mr. Mondragón's case, the district court entered a single document styled a "Memorandum Opinion and Order Granting Summary Judgment and Judgment," rather than keeping the opinion and the judgment separate, as the rule requires. App. 57. That means that the final judgment was entered on November 10 (150 days after June 13) and

the notice of appeal due on December 11 (December 10 was a Sunday), making this appeal timely.

## B. The Legal Framework for Wrongful Detention

A hodgepodge of state and federal law governs the timeliness of claims under 42 U.S.C. § 1983. The statute of limitations is drawn from the personal-injury statute of the state in which the federal district court sits. *Wilson v. Garcia*, 471 U.S. 261, 269 (1985). Federal law, however, determines the date on which the claim accrues and the limitations period starts to run. *Wallace*, 127 S. Ct. at 1095. State law governs any tolling of that period, *Wilson*, 471 U.S. at 269, except that federal law might also allow additional equitable tolling in rare circumstances, *Wallace*, 127 S. Ct. at 1099–1100. Neither party has provided a tolling argument to this court, and the New Mexico statute of limitations is three years. N.M. Stat. Ann. § 37-1-8. The issue left for this appeal is the date that Mr. Mondragón's claims for wrongful detention accrued, a question of federal law "conforming in general to common-law tort principles." *Wallace*, 127 S. Ct. at 1095.

We have held that a plaintiff who claims that the government has unconstitutionally imprisoned him has at least two potential constitutional claims. "The initial seizure is governed by the Fourth Amendment, but at some point after arrest, and certainly by the time of trial, constitutional analysis shifts to the Due Process Clause." *Pierce v. Gilchrist*, 359 F.3d 1279, 1285–86 (10th Cir. 2004).

If he has been imprisoned without legal process he has a claim under the Fourth Amendment analogous to a tort claim for false arrest or false imprisonment. If he has been imprisoned pursuant to legal but wrongful process, he has a claim under the procedural component of the Fourteenth Amendment's Due Process Clause analogous to a tort claim for malicious prosecution.[3] These torts are only analogies because § 1983 suits ultimately rest on the Constitution, not on state (or federal) common law. *Pierce*, 359 F.3d at 1285–88. However, these analogies guide us in applying rules for the accrual of a cause of action.

Both Fourth Amendment claims and due process claims for unconstitutional imprisonment are subject to special federal rules of accrual. As the Supreme Court explained in *Wallace*, the statute of limitations for a Fourth Amendment claim for false arrest or imprisonment "begin[s] to run . . . when the alleged false imprisonment ends." 127 S. Ct. at 1096 (internal quotation marks omitted). The false imprisonment ends for these purposes either when the victim is released or when the victim's imprisonment becomes "pursuant to [legal] process—when, for example, he is bound over by a magistrate or arraigned on charges." *Id.* (emphasis omitted). Thus, either the date of release or the date of sufficient legal process starts the statute of limitations running for the Fourth Amendment claim.

---

[3] In a technical sense, a Fourth Amendment claim against New Mexico officers is also a Fourteenth Amendment claim, because that is the amendment that incorporates the Fourth Amendment's protections against the states. *Mapp v. Ohio*, 367 U.S. 643 (1961). We avoid this terminology here to reduce confusion.

After the institution of legal process, any remaining constitutional claim is analogous to a malicious prosecution claim. The Supreme Court has not yet explicitly decided whether such a claim exists in these circumstances under the Fourth Amendment or the procedural component of the Due Process Clause. *See id.* at 1096 n.2 (citing *Albright v. Oliver*, 510 U.S. 266, 270–71, 275 (1994) (plurality opinion)); *see also Albright* at 275–76 (Scalia, J., concurring). This Circuit, however, has held that the Constitution permits due process claims for wrongful imprisonment after the wrongful institution of legal process.[4] *Pierce*, 359 F.3d at 1285–86. We also held that a due process claim for malicious prosecution arises only once "the original action," whatever form it has taken, has "been terminated in favor of the plaintiff." *Id.* at 1294. Because the statute of limitations does not start running before the elements of a claim are satisfied, the statute of limitations for this due process claim cannot start until the plaintiff has achieved a favorable result in the original action.[5]

In summary, two claims arise from an allegedly unconstitutional imprisonment as analysis "shifts" from the Fourth Amendment to the Due Process

---

[4] We do not foreclose the additional, though unlikely, possibility of a second Fourth Amendment claim, arising after the first one ends. *See Wallace*, 127 S. Ct. at 1096 n.2.

[5] Because the only issue on this appeal is the timeliness of Mr. Mondragón's claim, not its merits, we do not decide whether additional requirements, such as the existence of adequate state law remedies, might apply to a procedural due process claim. *See Becker v. Kroll*, 494 F.3d 904, 917–22 (10th Cir. 2007).

Clause.  *Pierce*, 359 F.3d at 1285–86.  The period of time between an unlawful arrest and the institution of legal process forms one constitutional claim, arising under the Fourth Amendment.  That claim accrues when the plaintiff is released or legal process is instituted justifying that imprisonment.  The period of time between the institution of that process and its favorable termination— through acquittal, habeas corpus, voluntary dismissal, etc.—forms a second claim, arising under the Due Process Clause.  That claim accrues, at the earliest, when favorable termination occurs.

### C. Mr. Mondragón's Claims

On this record, we cannot apply these two settled rules to Mr. Mondragón's complaint because we do not know whether he was *ever* given legal process justifying his detention.  The record does not reveal what kind of hearing he received in August or what its legal status was, and we do not decide (although we doubt) that a forged arrest warrant functions as legal process that terminates a Fourth Amendment claim and starts a due process claim.[6]  If Mr. Mondragón never received legal process justifying his imprisonment, then he has a straightforward claim under the Fourth Amendment for his entire time in jail.

---

[6] In *Pierce*, we did not decide what kind of legal process caused the Fourth Amendment claim to end and the Due Process claim to begin, *id.* at 1286, though we suggested that being held for seven weeks and then "exonerated before trial," raised only Fourth Amendment issues, not due process issues. *Id.* at 1287 n.5 (citing *Taylor v. Meacham*, 82 F.3d 1556 (1996)).  We do not decide that issue here, either.

Such a claim does not accrue until the false imprisonment ends. On the other hand, if Mr. Mondragón did at some point receive legal process for his imprisonment (as a result either of the arrest warrant or of the mysterious mid-August hearing), he has a potential due process claim from that period until his release.[7] This claim does not accrue until the process terminates in his favor, which presumably is the date his habeas corpus petition was granted. These accrual dates may be within the limitations period.

We therefore remand the case to the district court to sort out the significance, if any, of the mid-August hearing and to determine the termination date of any Fourth Amendment claim and the accrual date of any due process claim, based on *Wallace* and *Pierce*. On remand, the parties are free to make arguments relating to other timeliness issues not barred by law of the case, such as equitable tolling.

---

[7] The complaint does not explicitly plead a claim of malicious prosecution, though it pleads facts that could support such a claim. As we held in *Pierce*, however, it is not essential that the plaintiff use the words "malicious prosecution" to describe his due process claim:

> Plaintiff's actual cause of action is for a constitutional violation under § 1983; the common law tort of malicious prosecution is relevant only as an analogy that is helpful in structuring the legal analysis. Plaintiff's failure to plead malicious prosecution as a cause of action is therefore not fatal to his action.

359 F.3d at 1286 n.3. Officer Thompson's attorney conceded at oral argument that Mr. Mondragón's complaint, properly read, includes a due process claim analogous to malicious prosecution.

-10-

## III.  CONCLUSION

The judgment of the district court is **VACATED** and the case is

**REMANDED** for further proceedings in accordance with this opinion.