FILED
United States Court of Appeals
Tenth Circuit

**June 7, 2011**

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

NANCY LEWIS,

        Plaintiff - Appellant,

v.

MCKINLEY COUNTY BOARD OF
COUNTY COMMISSIONERS,

        Defendant - Appellee.

No. 10-2221
(D.C. No. 1:10-CV-00596-JAP-RLP)
(D. N. Mex.)

---

NANCY LEWIS,

        Plaintiff - Appellant,

v.

RANDY SCOTT; CAROLYN
INGRAM; LOUISE B. SCHAEFFER;
ANTOINETTE CORDOVA; SUSAN
SUAZO-MARTINEZ; COLLEEN
MARTINEZ; KIMBERLY
MARTINEZ,

        Defendants - Appellees.

No. 11-2000
(D.C. No. 6:10-CV-01134-WJ-KBM)
(D. N. Mex.)

---

**ORDER AND JUDGMENT**[*]

---

[*]After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
these appeals. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The cases are
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,

(continued...)

Before **MATHESON**, **McKAY**, and **EBEL**, Circuit Judges.

In these two cases, Nancy Lewis, proceeding pro se here as in the district court, appeals the district court's orders dismissing her complaints. She also seeks leave to proceed in forma pauperis (IFP) in appeal No. 10-2221. The district court granted leave to proceed IFP in appeal No. 11-2000. We exercise jurisdiction under 28 U.S.C. § 1291 in both cases. We deny leave to proceed IFP in appeal No. 10-2221, and affirm the district court's judgment in that case. In appeal No. 11-2000, we affirm in part and reverse and remand in part.

## I. District Court's Dismissals for Failure to State a Claim

In both cases, the district court dismissed the respective complaints for failure to state a claim upon which relief can be granted. We review the dismissals de novo, accepting each complaint's allegations as true, and construing the allegations and any reasonable inferences in the light most favorable to the plaintiff. *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999). We construe liberally Ms. Lewis's pro se filings. *Id.*

---

*(...continued)
and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

-2-

**A.** *Appeal No. 10-2221, Lewis v. McKinley County*

**1.** *Background*

Ms. Lewis sued the McKinley County Board of County Commissioners (McKinley County) under 42 U.S.C. § 1983 based on her detention at the McKinley County Adult Detention Center. She alleged violations of her Fifth, Eighth, and Fourteenth Amendment rights. She averred that she was detained for 39 days on warrants issued in Georgia, nine days longer than the 30 days allowed by 18 U.S.C. § 3182. She further alleged that Captain Greene, the jail official in charge of releasing prisoners, told her that intervening weekends and holidays did not count in the 30-day calculation. Ms. Lewis also claimed that her conditions of confinement at the jail were inhumane.[2]

McKinley County filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Ms. Lewis responded. In a thorough order, the district court granted the motion and dismissed the case with prejudice, noting that the language of 18 U.S.C. § 3182 is permissive rather than mandatory. Even if § 3182 required Ms. Lewis's release after 30 days, the court said she failed to allege facts under which McKinley County could be held liable for the allegedly wrongful actions of Captain Greene.

---

[2]Ms. Lewis also brought a claim for injunctive relief. Generally, a prisoner's release from jail moots her individual claim for injunctive relief. *McAlpine v. Thompson*, 187 F.3d 1213, 1218 (10th Cir. 1999).

The court further ruled that Ms. Lewis's allegations concerning jail conditions did not describe deprivations that were sufficiently serious to state a claim, nor did she plead facts showing that McKinley County was deliberately indifferent to the jail conditions.

## 2. *Discussion*

We ask on review of a Rule 12(b)(6) dismissal whether there is "plausibility in [the] complaint." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 564 (2007). The complaint "does not need detailed factual allegations," but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Ms. Lewis's complaint failed to allege sufficient facts. Her appellate brief does not convince us otherwise.

### (a) *Detention*

Ms. Lewis asserts that 18 U.S.C. § 3182 required her release after 30 days. Although the word "may" in § 3182 supports the district court's conclusion that the statute is not mandatory, we need not decide that question because Ms. Lewis failed to allege facts imputing liability to McKinley County. Ms. Lewis's detention claim must fail because a state political subdivision such as McKinley County may not be held liable under 42 U.S.C. § 1983 "for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Social Servs.*, 436 U.S.

658, 694 (1978). "It is only when the execution of the government's policy or custom inflicts the injury that the municipality may be held liable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (ellipsis omitted) (quotation omitted).

Ms. Lewis argues that McKinley County is liable for Captain Greene's alleged misconduct because (1) Captain Greene was the final decisionmaker, (2) the county may have had an official prisoner-release policy and ignored any laxity in compliance with it, (3) the county inadequately trained Captain Greene, and (4) the county hired Captain Greene pursuant to a flawed hiring policy. *See* Aplt. Opening Br. at 6-8.

Ms. Lewis first asserts that a "likely theory" of county liability is that Captain Greene was the final decisionmaker for releasing prisoners under § 3182 and his actions thereby may be construed as executing an official county policy. Aplt. Opening Br. at 6. She further contends that "it is possible that the County in fact does have a policy" for extradition holds, *id.* at 7, and "it is also possible that the County was aware that there was laxity" concerning release of prisoners for extradition but "turned a blind eye to the obvious constitutional implications," *id.* at 8. These arguments cannot salvage Ms. Lewis's complaint.

"[A] municipality is liable only when the official policy is the 'moving force' behind the injury alleged." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (quotation omitted). Accordingly, "a plaintiff must show that the

municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and deprivation of federal rights." *Id.* (quotation omitted). Ms. Lewis's alleged facts do not show that an official McKinley County policy was the moving force behind her alleged injury. Indeed, her allegations do not identify any official McKinley County policy or custom. Therefore, she has failed to show that McKinley County is liable based on an official policy or custom.

Ms. Lewis next asserts that McKinley County may be liable for inadequately training Captain Greene. Aplt. Opening Br. at 7. Municipal liability based on a policy of inadequate training requires proof that the policy "reflect[ed] a 'deliberate' or 'conscious' choice by a municipality." *City of Canton*, 489 U.S. at 389. This may be demonstrated "when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney*, 143 F.3d at 1307. Ms. Lewis's allegation that Captain Greene "was obviously ill trained, for he apparently had no check on how long a prisoner had been confined and when he or she was to be released," R. at 7, did not state a claim against McKinley County under the requirements of *Canton* and *Barney*. Moreover, the vague statement in her complaint that she was "aware of two other recent cases . . . of illegal incarceration of women" at the jail for longer than 30 days, *id.* at 8 n.4, is insufficient to state a claim that McKinley

-6-

County had actual or constructive notice that its failure to act was substantially certain to result in a constitutional violation. Ms. Lewis has identified no facts showing that McKinley County was aware of how long the other women were held, nor has she alleged that they were held pursuant to § 3182.

Ms. Lewis also argues that McKinley County is liable based on its decision to hire Captain Greene. Aplt. Opening Br. at 7. But she did not raise this issue in the district court. Therefore, we do not consider it for the first time on appeal. *Stearns v. Clarkson*, 615 F.3d 1278, 1284 n.4 (10th Cir. 2010).

### (b) *Conditions of Confinement*

Turning to Ms. Lewis's claim that the jail conditions were cruel and unusual, we note that Ms. Lewis was a pretrial detainee. "Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, the Eighth Amendment standard provides the benchmark for such claims." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (citation omitted). To establish an Eighth Amendment conditions-of-confinement claim, "a plaintiff must satisfy two requirements, consisting of an objective and [a] subjective component." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (quotation omitted). To satisfy the objective component, an inmate must allege facts to demonstrate that the deprivation was "sufficiently serious." *Fogle v. Pierson*, 435 F.3d 1252, 1260 (10th Cir. 2006). "The subjective component requires the jail official to have a sufficiently culpable state of mind. In the context of

prison-conditions claims, the required state of mind is one of deliberate

indifference to inmate health and safety." *McBride*, 240 F.3d at 1291

(quotation omitted).

> Deliberate indifference, however, is defined differently for Eighth
> Amendment and municipal liability purposes. In the prison
> conditions context, deliberate indifference is a subjective standard
> requiring actual knowledge of a risk by the official. In the municipal
> liability context, deliberate indifference is an objective standard
> which is satisfied if the risk is so obvious that the official should
> have known of it.

*Barney*, 143 F.3d at 1308 n.5. Ms. Lewis's complaint fails to show that the

alleged deprivations were sufficiently serious under the case law to rise to the

level of an Eighth Amendment violation.

Ms. Lewis asserted in her complaint that her cell lacked daylight and

adequate toilet privacy, that it was filthy and had to be sprayed regularly for

bacteria, that the shower drain was clogged, that she was allowed exercise only

one or two times per week, and that the food was unappetizing. At one meal, she

was "almost certain" there was a maggot in the rice, but she did not have her

glasses on so she could not be sure.[3]

---

[3]Ms. Lewis also described an incident during which jail officials used mace on two other inmates and subjected them to a strip search. Generally, a litigant "must assert [her] own legal rights and interests, and cannot rest [her] claim to relief on the legal rights or interests of third parties." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (quotation omitted). Moreover, the use of mace and strip searches are not per se constitutional violations. *See Archuleta v. Wagner*, 523 F.3d 1278, 1284 (10th Cir. 2008) (strip search); *Smith v. Iron County*,

(continued...)

Although these alleged conditions are certainly not optimal and understandably objectionable, they do not rise to a constitutional violation. "[O]nly those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (citation omitted) (quotation omitted). "[T]he Constitution does not mandate comfortable prisons," and conditions may be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981).

This court has held that deprivations or conditions were sufficiently serious to state an Eighth Amendment claim in the following situations: denying a prisoner food or water for more than 24 hours during transport between prisons and restraining him with "a stun belt, belly chains, handcuffs, and a black box covering the handcuffs, which prevented him from accessing the food and water" provided to other prisoners, *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010); denying a prisoner all outdoor exercise for three years, *Fogle v. Pierson*, 435 F.3d 1252, 1259-60 (10th Cir. 2006); exposing a prisoner "to other inmates' urine and feces via . . . standing water and also to close confinement with the odor of his own accumulated urine," *DeSpain v. Uphoff*, 264 F.3d 965, 974-75 (10th Cir. 2001); and requiring a prisoner to be in a feces-covered cell for three

---

[3](...continued)
692 F.2d 685, 687 (10th Cir. 1982) (mace).

days, *McBride*, 240 F.3d at 1292.

In contrast, this court has held that the following alleged conditions of confinement were not sufficiently serious to state a claim: a prisoner placed in his bare feet in a cell without a toilet for five hours, *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1188 (10th Cir. 2003); a slippery shower caused by standing water, *Reynolds v. Powell*, 370 F.3d 1028, 1031-32 (10th Cir. 2004); and a prisoner's claim that he required a double-portion diet where his doctors differed on his need for such a diet, *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002).

We agree with the district court's assessment that, accepting Ms. Lewis's allegations as true, "none of the conditions at the Detention Center deprived [her] of shelter, food, drinking water, and sanitation such that [she] could be said to have been deprived of the minimal civilized measure of life's necessities during her thirty-nine day stay at the Detention Center." R. at 66 (quotations omitted). Even if we assume the conditions were sufficiently serious, we also find that Ms. Lewis's complaint lacks sufficient allegations to meet the element of deliberate indifference.

Because Ms. Lewis's complaint failed to establish that the conditions of confinement at the jail violated the Eighth Amendment, no liability can attach to McKinley County. "[L]iability will not attach where there was no underlying constitutional violation by any of the municipality's officers." *Ellis ex rel. Estate*

-10-

*of Ellis v. Ogden City*, 589 F.3d 1099, 1104 (10th Cir. 2009) (brackets omitted) (quotation omitted).

The district court's judgment is AFFIRMED.

## B.  *Appeal No. 11-2000, Lewis v. Scott*

### 1.  *Background*

Ms. Lewis filed this case under 42 U.S.C. § 1983, claiming her civil rights were violated under the Fourth and Fifth Amendments when officials at the New Mexico Department of Health and Human Services (Department) discontinued her Medicaid, Medicare, and food stamps benefits after her Social Security disability benefits had been suspended.  As the district court explained, Ms. Lewis's disability benefits were discontinued pursuant to a Social Security Administration "policy of denying or suspending federal social-security benefits of persons who were fleeing to avoid prosecution."  R. at 35 n.3.  Her ineligibility for Social Security disability benefits made her ineligible for Medicare and Medicaid benefits as well.  *See id.* at 14.  The Department also temporarily discontinued her food stamps.  *See id.* at 12.  The Social Security policy was changed effective April 1, 2009, to suspend benefits "based on outstanding felony arrest warrants for only the crimes of flight to avoid prosecution or confinement, escape from custody, and flight-escape."  *Id.* at 35 n.3 (quoting http://www.ssa.gov/martinezsettlement/notice.htm).  Ms. Lewis does not dispute the district court's statement that she "was paid at least $15,000 in back benefits

-11-

in May 2009." *Id.* Moreover, she recouped all past food stamp benefits. *Id.* at 4-5.

In her complaint, Ms. Lewis sought compensatory and punitive damages against several New Mexico state government officials. She named the person who prepared the paperwork to discontinue her benefits (defendant K. Martinez) and her supervisors (defendants Cordova, Suazo-Martinez, and C. Martinez). She also named the administrative law judge who ruled on her appeal from the action discontinuing her benefits (defendant Schaeffer), and the official who reviewed that decision (defendant Ingram). She finally named the Department's Inspector General for allegedly delaying reinstatement of her food stamp benefits (defendant Scott). In the absence of an answer or motion from any named defendant, the district court evaluated the complaint under 28 U.S.C. § 1915(e)(2)(B), determined that it did not state any § 1983 claims, and dismissed the case with prejudice.

The district court held that the claims against Kimberly Martinez were barred by the applicable statute of limitations and that the complaint failed to state a claim against the supervisors because "supervisory liability is not a cognizable theory of recovery under § 1983." R. at 35. The court further determined that defendants Schaeffer and Ingram were immune from suit as quasi-judicial officials. Finally, the court held that the claim alleging that defendant Scott continued to deduct food stamp payments for several months was

-12-

not cognizable under § 1983.

## 2. *Discussion*

### *(a) Supervisor Claims*

The district court determined that Ms. Lewis's allegations against the supervisors did not support supervisory liability under § 1983. Ms. Lewis alleged in her complaint that "they were aware of the Department's exposure and failed to act." R. at 6. But knowledge and acquiescence are insufficient for supervisory liability. *See Iqbal*, 129 S. Ct. at 1949 (rejecting argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution"). Accordingly, we affirm the district court's dismissal of the supervisory defendants Cordova, Suazo-Martinez, and C. Martinez.

### *(b) Judicial Official Claims*

We also affirm the dismissal of defendants Schaeffer and Ingram. These defendants were entitled to absolute immunity from monetary damages as quasi-judicial officials. *See Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985) (observing that absolute immunity applies to administrative law judges and "certain others who perform functions closely associated with the judicial process"); *Butz v. Economou*, 438 U.S. 478, 513 (1978).

### *(c) Statute of Limitations*

We next address Ms. Lewis's argument that the district court incorrectly applied the statute of limitations to her claim against Kimberly Martinez. The district court held that the three-year statute of limitations had run before Ms. Lewis filed her complaint on November 29, 2010, because she alleged that Ms. Martinez's actionable conduct occurred on November 28, 2007. R. at 4. *See Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008) (holding New Mexico statute of limitations for filing a § 1983 action is three years). The deadline fell on a Sunday, however, so Ms. Lewis had until Monday, November 29, 2010, to file her complaint. Accordingly, the complaint was timely. *See* Fed. R. Civ. P. 6(a)(1)(C). The district court acknowledged this error when it granted Ms. Lewis IFP status for this appeal. R. at 69.

Nevertheless, this error does not require remand to the district court because Ms. Lewis failed to state a claim for relief against Ms. Martinez. *See Rakity v. Dillon Cos.*, 302 F.3d 1152, 1166 n.4 (10th Cir. 2002) ("We are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court.") (quotation omitted).

### *(d) Medicaid and Medicare Claims*

Ms. Lewis's complaint alleged that Kimberly Martinez "dumped [her] from Medicaid and food stamp rolls. And from Medicare, effectively." R. at 4.

-14-

Ms. Lewis has not alleged that Ms. Martinez was responsible for discontinuing her Social Security disability benefits under the pre-April 1, 2009, policy. As to her Medicaid and Medicare benefits, the record reflects that Medicare benefits were discontinued because they were contingent on her eligibility for Social Security disability benefits. *Id.* at 13 (Judge Schaeffer's decision stating, "Ms. Lewis' Medicare Part A coverage ended when her Social Security disability payments ended"). In turn, Medicaid was discontinued as a result of Ms. Lewis's ineligibility for Medicare. *Id.* at 14 (Judge Schaeffer's decision stating, "Because Ms. Lewis is no longer covered by Medicare part A, she is not eligible for [Qualified Medicaid Beneficiary]").

Ms. Lewis's cursory and conclusory allegations regarding Medicare and Medicaid benefits fail to state a claim. Ms. Lewis's complaint asserts that her Fourth and Fifth Amendment rights were violated but fails to allege facts that even suggest a claim under either. Her complaint also alleged that she was denied due process. If Ms. Lewis is attempting to allege a procedural due process claim regarding Medicaid and Medicare benefits, her complaint is deficient for the same reasons we affirmed dismissal of one of her previous cases: "the complaint contained insufficient facts to establish that Ms. Lewis possessed an interest protected by the Fourteenth Amendment's Due Process Clause, what process allegedly was due, or how any defendant acted outside of such process." *Lewis v. Central Market*, 378 F. App'x 780, 786 (10th Cir. 2010).

-15-

It is not clear from her complaint whether Ms. Lewis attempted to allege a violation of a federal statutory right. If she did, her complaint fails to allege sufficient facts to demonstrate that she has an individually enforceable right under a federal statute. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002) ("We now reject the notion that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983."); *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 120 (2005) ("[T]o sustain a § 1983 action, the plaintiff must demonstrate that the federal statute creates an individually enforceable right in the class of beneficiaries to which he belongs.") (citation omitted).[4]

### (e) Food Stamp Claims

Ms. Lewis also alleged that Ms. Martinez "dumped" her from the food stamp rolls. This claim suggests Ms. Martinez processed the paperwork to interrupt Ms. Lewis's food stamps.[5] A right to the receipt of food stamps may

---

[4]Ms. Lewis's complaint also asserted that "the Department had lied" about discontinuing her Medicare coverage when, as she later discovered, those benefits had not been discontinued. R. at 5. She claimed damages for her delay in seeking medical attention based on the misinformation. But Ms. Lewis has not alleged that any defendant personally lied to her about her Medicare benefits. Therefore, she has failed to state a claim under § 1983. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.") (quotation omitted).

[5]As indicated in her complaint, Ms. Lewis's food stamps were reinstated and she recouped all of those benefits. R. at 4-5, 12.

-16-

implicate procedural due process.  *See Atkins v. Parker*, 472 U.S. 115, 128 (1985) (stating food stamp benefits are treated as a form of "property" for those qualified to receive them, and are accordingly protected by the Due Process Clause).  But Ms. Lewis's allegations that Ms. Martinez "dumped" her from the food stamp rolls, R. at 4, and that "Defendants . . . denied Plaintiff due process," *id.* at 3, do not identify facts showing that her food stamps were suspended without procedural due process.  "Although we construe a pro se plaintiff's complaint broadly, the plaintiff still has the burden of alleging sufficient facts on which a recognized legal claim could be based."  *Jenkins v. Currier*, 514 F.3d 1030, 1032 (10th Cir. 2008) (quotation omitted).  Consequently, Ms. Lewis failed to state a claim against Kimberly Martinez.

For similar reasons, we conclude that the complaint failed to state a claim against defendant Scott.  Ms. Lewis asserted that Mr. Scott, Inspector General of the Department, improperly delayed reinstatement of her food stamps.  R. at 4-5. As with the claim against Ms. Martinez, Ms. Lewis's complaint does not plead sufficient facts to show she was denied procedural due process.  We also question, given Mr. Scott's position as Inspector General of the Department, whether the complaint adequately alleges any personal involvement on his part with Ms. Lewis's food stamps.

### *(f) Remand for Leave to Amend*

Although we agree with the district court's dismissals of the claims against defendants K. Martinez and Scott, we remand with directions to allow Ms. Lewis to amend her complaint concerning claims against these defendants regarding Medicaid, Medicare, and food stamps. The district court dismissed the complaint with prejudice, a procedure that is appropriate "only where it is obvious that the plaintiff cannot prevail on the facts [she] has alleged and it would be futile to give [her] an opportunity to amend." *Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010) (quotation omitted). A pro se plaintiff "whose factual allegations are close to stating a claim but are missing some important element that may not have occurred to [her], should be allowed to amend [her] complaint." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Accordingly, we affirm the dismissal of defendants K. Martinez and Scott, reverse the "with prejudice" part of the dismissal, and remand with instructions for the district court to allow Ms. Lewis to seek leave to file an amended complaint pertaining to these two defendants.

\* \* \*

In summary, the district court's dismissal with prejudice of the claims against defendants Cordova, Suazo-Martinez, C. Martinez, Schaeffer, and Ingram is AFFIRMED. The dismissal of the claims against defendants K. Martinez and Scott is AFFIRMED as to the dismissal, REVERSED as to "with prejudice," and

REMANDED with instructions for the district court to allow Ms. Lewis to seek leave to file an amended complaint.

## II. In Forma Pauperis – Appeal No. 10-2221

This court may authorize Ms. Lewis to proceed IFP, *see* 28 U.S.C. § 1915(a), if she can "show a financial inability to pay the required filing fees and the existence of a reasoned, nonfrivolous argument on the law and the facts in support of the issues raised on appeal." *DeBardeleben v. Quinlan*, 937 F.2d 502, 505 (10th Cir. 1991).

Ms. Lewis paid the district court filing fee. The district court denied her request to proceed IFP on appeal, holding that she had failed to establish her indigency based on a monthly income of $1,390 and expenses of $972, plus a checking account balance of $360. As a further ground to deny IFP, the court held that she had failed to show "the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised on appeal." R. at 95.

In addition to the two cases on review here, Ms. Lewis has filed 21 lawsuits in the United States District Court for the District of New Mexico. *See, e.g., Lewis*, 378 F. App'x 780 (resolving nine appeals concerning thirteen lawsuits) ("*Lewis I*"). In *Lewis I*, this court denied Ms. Lewis leave to appeal IFP, concluding that she was not indigent when she filed the cases underlying those appeals between March and November of 2009, and affirming the district court's determination in four of the cases that the claims were frivolous or that she had

-19-

failed to state a claim on which relief may be granted. This court's denial of IFP was based on Ms. Lewis's stated monthly income of $1,324 and expenses of $1,579. Moreover, Ms. Lewis had received a $15,000 lump-sum payment of past-due social security benefits in May 2009, of which she still had nearly $1,000 in the bank.

Ms. Lewis now seeks to proceed IFP on appeal in *Lewis v. McKinley County*, No. 10-2221. She has filed a motion and a financial affidavit dated December 1, 2010, showing a monthly income of $1,356,[6] expenses of $1,547, and $38 in a checking account. In her financial affidavit, Ms. Lewis claims her monthly food expense is $400. In her other pending case, *Lewis v. Scott*, the district court found $400 per month for food to be too high for "a woman in Lewis's age group on a thrifty plan" who receives some food stamps. R. appeal No. 11-2000, at 33. In response, she informed the district court that she claimed $159 per month for food for herself, and was no longer claiming food expenses for her disabled adult son. *Id.* at 49. Similarly, in her affidavit filed with this court, Ms. Lewis claims $150 for telephone expenses, but she told the district court that she pays $90 at her new residence with free internet service. *Id.* Ms. Lewis also claims $200 for office expenses and gifts, amounts the district

_____

[6]Ms. Lewis indicated in her affidavit that her unemployment payments of $404 were expected to terminate in January 2011, but she stated to the district court that she expected they would be extended. Therefore, we include the unemployment benefit in her income.

-20-

court found not to be "necessities of life." *Id.* at 68 n.1.

Adjusting her monthly expenses based on the foregoing to $1,046 ($1,547 less $241 for food, $60 for phone, and $200 for office expenses and gifts), and considering her income of $1,356 per month, we conclude that she should pay her filing fee. And, as we have explained above, she has failed to make a reasoned, nonfrivolous argument on the law and the facts in her *McKinley County* appeal, thus providing an additional reason to deny her IFP motion. Therefore, we DENY Ms. Lewis leave to proceed IFP in appeal No. 10-2221.[7]

### III. Conclusion

Ms. Lewis's motion to proceed IFP in appeal No. 10-2221 is DENIED. The district court's judgment in appeal No. 10-2221 is AFFIRMED. The district court's judgment in appeal No. 11-2000 is AFFIRMED in part, REVERSED in part, and REMANDED with instructions as explained in this order and judgment.

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge

---

[7]The district court granted Ms. Lewis leave to proceed IFP on appeal in *Lewis v. Scott,* appeal No. 11-2000. We do not reevaluate that decision, which was based on the income and expense figures the district court found to be accurate at the time, and on the court's evaluation of Ms. Lewis's proposed appellate issues. *See* Fed. R. App. P. 24(a)(2) (providing party may proceed IFP on appeal where district court has granted leave to do so).