FILED
United States Court of Appeals
Tenth Circuit

October 27, 2015

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT
_____

DALE GROSS,

    Plaintiff - Appellant,

v.

GUILLERMO SAMUDIO, Community
Parole Officer, in his personal capacity;
ANTHONY YOUNG, Chairman of the
Colorado Parole Board, in his personal
capacity; ED THOMAS, Member of the
Parole Board, in his personal capacity;
DENISE BALAZIC, Member of the Parole
Board, in her personal capacity;
PATRICIA BAN WAAK, Member of the
Parole Board, in her personal capacity;
JOHN O'DELL, Member of the Parole
Board, in his personal capacity; IAN
SWEENEY, Community Parole Officer, in
his personal capacity; JENNIFER
DUNCAN, Community Parole Officer, in
her personal capacity; MICHAEL
ANDERSON, Member of the Parole
Board, in his personal capacity; REBECCA
OAKES, Member of the Parole Board, in
her personal capacity; JOHN DAVIS,
President of RSA, Inc.; JOHN DOES,
Numbers 1-2, unknown officers of RSA,
Inc.; JOHN DOES, Numbers 3-4, unknown
officers of Progressive Therapy Systems,
P.C.; FREDERICK E. TOLSON, President
Sexual Offense Resource Services, LLC;
JOHN DOES, Numbers 5-6, unknown
officers of Sexual Offense Resource
Services, LLC; WALTER T. SIMON,
Ph. D., President of Progressive Therapy
Systems, P.C.;

No. 14-1248
(D.C. No. 1:11-CV-02594-RPM)
(D. Colo.)

Defendants - Appellees,

and

GREIG VEEDER, President and Director, Teaching Humane Existence Treatment Program, Inc.; JOHN DOES, Numbers 7-8, unknown officers of Teaching Humane Existence Treatment Program, Inc.,

Defendants.

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **HOLMES** and **McHUGH**, Circuit Judges.
_____

Dale Gross, a former Colorado inmate and parolee, appeals from the district court's dismissal of his 42 U.S.C. § 1983 civil rights action against numerous Colorado state parole officers and members of the Colorado Parole Board (the State Defendants), and officers of several private entities that provide sex offender treatment programs in Denver, Colorado, namely John Davis, president of Redirecting Sexual Aggression, Inc. (RSA); Walter Simon, president of Progressive Therapy Systems, P.C. (PTS); Frederick E. Tolson, president of Sexual Offense Resource Services, L.L.C. (SORS); and Greig Veeder, president of Teaching Humane

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

2

Existence Treatment Program, Inc. (THE) (collectively, the Private Defendants). Gross alleged the parole conditions imposed by the State Defendants relating to the requirement that he obtain sex offender treatment from one of the Private Defendants violated his constitutional rights, and that the Private Defendants violated his constitutional rights by refusing to enroll him in their treatment programs. The district court dismissed the complaint, ruling Gross failed to show the State Defendants violated any clearly established constitutional right or that the Private Defendants were acting under color of state law. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm the dismissal, but on different grounds as to the State Defendants because the claims against them are time barred.

## I. Background

Gross was convicted after a jury trial of first degree criminal trespass, first degree burglary, retaliation against a witness or victim, second degree assault, third degree assault, two domestic violence counts, and one crime of violence count. *People v. Gross*, 39 P.3d 1279, 1280 (Colo. App. 2001). Based on information in Gross's pre-sentence report that he had engaged in sexually violent behavior with his girlfriend, and following an administrative review hearing, the Colorado Department of Corrections (DOC) classified Gross as an S–4 sex offender when he entered prison in 2000. An S-4 sex offender classification applies to inmates who were not convicted of a sex offense but for whom sex offender treatment has been recommended. *See Chambers v. Colo. Dep't of Corrs.*, 205 F.3d 1237, 1240 n.8 (10th Cir. 2000) (describing the S-4 sex offender classification). Colorado law then

3

in effect gave the DOC complete discretion to determine an inmate's sex offender

classification, notwithstanding any contrary prosecution stipulation or court finding.

Colo. Rev. Stat. § 16-22-103(1)(d) (2005); *see also Gwinn v. Awmiller*, 354 F.3d

1211, 1218-19 (10th Cir. 2004) (holding that an inmate not convicted of a sex offense

may be classified by the DOC as a sex offender if it affords him procedural

protections).  Gross filed a § 1983 action challenging his sex offender classification

in 2002, which was dismissed.  *See Gross v. Colo. Dep't of Corr.*, 75 F. App'x 702,

704-05 (10th Cir. 2003) (ruling that Gross received adequate due process in the

classification administrative hearing, and that he did not state a cognizable Equal

Protection or Fifth Amendment violation).

Gross was first released from prison in August 2008, subject to five years of

mandatory parole.  He was required as a condition of his parole to enroll in and

"actively participate in" a sex offender treatment program.  Aplt. App. at 221.[1]  The

parole conditions defined "participation" in treatment as including a requirement that

Gross admit responsibility for his offense.  *Id.*  Gross alleges in his complaint that it

is impossible to admit responsibility for a sex offense that never took place.  Gross

was directed to contact PTS.  Gross enrolled, but his PTS therapist terminated him

from treatment in January 2009, because of Gross's "adversarial presentation in

---

[1] Although this was a term and condition of his parole, Gross was not
statutorily required to participate in sex offender treatment under Colorado's Sex
Offender Lifetime Supervision Act because he was not convicted of a sex offense.
*See* Colo. Rev. Stat. § 16-11.7-105 (requiring persons convicted of a sex offense to
undergo appropriate sex offender treatment).

4

treatment and his inability to accept responsibility for his offense." *Id.* at 317.

Following a hearing, Gross's parole was revoked in 2009 for failure to submit a urine

test and failure to participate in sex offender treatment.

Gross was again paroled in August 2009. His conditions of parole again

included the requirement that he actively participate in sex offender treatment and

admit responsibility for his offense. Gross was directed to contact SORS, but

according to the parole revocation investigation report, he repeatedly failed to

schedule appointments, was found to be deceptive on a SORS polygraph

examination, and continued to deny any sexually inappropriate behavior. Aplee.

Supp. App. at 97. SORS informed Gross's parole officer that he was not amenable to

treatment. Gross's parole officer then referred Gross to RSA. According to the

parole revocation investigation report, Gross failed to schedule his required

appointments with RSA or to comply with RSA's treatment directives, and was found

to have been deceptive on an RSA polygraph examination. Gross sought a

restraining order against RSA to prohibit it from requiring him to admit

responsibility or take a polygraph examination, which was eventually dismissed as

moot. Finally, Gross's parole officer referred him to THE, the only remaining sex

offender treatment program available in Denver, where Gross lived. According to the

parole revocation investigation report, Gross failed to schedule an appointment with

THE.

In February 2011, Gross was charged with violating parole based on his failure

to schedule appointments with RSA or THE and for associating with a convicted

5

felon. At the March 2011 revocation hearing, the parole board directed Gross's parole officer to contact PTS, RSA, SORS, and THE to determine if any would accept Gross into treatment, but all declined to accept Gross based on his previous unwillingness to comply with their treatment programs. Gross's parole was revoked in April 2011 based on his failure to obtain sex offender treatment and for associating with a convicted felon.

Gross filed his § 1983 complaint in October 2011. He alleged the State Defendants violated his First, Fifth and Fourteenth Amendment rights by ordering him to participate in sex offender treatment as a condition of parole with treatment providers who could arbitrarily or capriciously refuse him treatment. He alleged the Private Defendants violated his constitutional rights when, following the March 2011 parole revocation hearing, they refused to accept Gross into their sex offender treatment programs, allegedly in retaliation for Gross's exercise of his First Amendment right to challenge their acceptance-of-responsibility treatment requirement. Gross was released on parole in November 2011, but petitioned to have his parole revoked. He was unconditionally released from custody in November 2012.

The State Defendants moved for dismissal on the grounds that Gross's claims were barred by the two-year statute of limitations and that they were entitled to qualified immunity. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or

6

constitutional rights of which a reasonable person would have known." (internal

quotation marks omitted)). The district court granted summary judgment to the State

Defendants on the ground that they were entitled to qualified immunity. The district

court dismissed the claims against the Private Defendants on the grounds that Gross's

complaint failed to allege any facts showing they were acting under color of state

law, as is required for liability under § 1983, when they refused to accept him for

treatment.[2]

## II. Discussion

"To state a claim under § 1983, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States, and must show that the

alleged deprivation was committed by a person acting under color of state law."

*West v. Atkins*, 487 U.S. 42, 48 (1988). We review de novo the district court's grant

of summary judgment to the State Defendants. *Reeves v. Churchich*, 484 F.3d 1244,

1250 (10th Cir. 2007). We also review de novo the district court's dismissal of the

claims against the Private Defendants under Rule 12(b)(6). *Peterson v. Grisham*,

594 F.3d 723, 727 (10th Cir. 2010).

---

[2] John Davis, president of RSA, and Walter Simon, president of PTS, filed separate Fed. R. Civ. P. 12(b)(6) motions to dismiss for failure to state a claim, both of which were granted by the district court. Frederick Tolson, president of SORS, did not respond to the complaint, but the district court denied Gross's motion for default judgment, ruling the claims against Tolson were the same as those against Davis that it dismissed for failure to state a claim. It does not appear that Greig Veeder, president of THE, ever entered an appearance, but the district court dismissed all claims against all defendants in its final judgment, and Gross does not appeal Veeder's dismissal.

7

A. State Defendants

The State Defendants argued in their motion for dismissal, in their motion for summary judgment, and now on appeal that Gross's claims against the State Defendants were barred by the two-year statute of limitations. Gross failed to ever assert any responsive argument to the statute of limitations arguments before the district court or before this court on appeal. We conclude from our independent review of the record that Gross's claims are time-barred as a matter of law. *See United States v. Sandoval*, 29 F.3d 537, 542 n.6 (10th Cir. 1994) (holding we may affirm on alternative grounds if "there is a record sufficient to permit conclusions of law" (internal quotation marks omitted)); *see also Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002) (requiring court to determine if summary judgment is appropriate under Fed. R. Civ. P. 56 even if the opposing party does not respond to the summary judgment motion).

"[T]he statute of limitations for § 1983 actions brought in Colorado is two years from the time the cause of action accrued." *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006). While state law governs the applicable statute of limitations, federal law determines when the claim accrues and when the limitations period starts to run. *Mondragón v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008). "A § 1983 action accrues when facts that would support a cause of action are or should be apparent." *Fogle*, 435 F.3d at 1258 (internal quotation marks omitted). "Since the injury in a § 1983 case is the violation of a constitutional right, such claims accrue when the plaintiff knows or should know that his or her constitutional rights have

8

been violated." *Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998) (citations and internal quotation marks omitted). The claim accrues when the constitutional injury occurs, "not when the consequence of that constitutional injury . . . manifested itself." *Id*.

We have reviewed Gross's allegations in his complaint, as well as the undisputed evidence presented in the motion for summary judgment, and conclude it is undisputed that Gross knew or should have known when he was paroled in August 2008 and re-paroled in August 2009, the exact terms and conditions of parole on which his constitutional claims are based. *See* Aplt. App. at 221; 224-25. Gross has known since he was first paroled in 2008 and again in 2009 that he was required to undergo sex offender treatment, and that the conditions of this treatment would be decided by the treatment provider. His August 2009 parole conditions stated:

> You must actively participate in offense specific mental health treatment approved by the Department of Corrections which may be at your own expense. . . . You will sign and abide by the conditions of a treatment program *as defined by the treatment provider*. Program participation is defined as attendance at all meetings, prompt payment of fees, *admission of responsibility for your offense*, and progress toward reasonable treatment goals. **Unsuccessful termination from treatment will be considered a violation of this directive**. Subsequent treatment referrals, if any, will be at the discretion of your Community Parole Officer.

*Id*. at 225 (emphasis in italics added).

Gross signed and initialed these requirements, and therefore knew he had to attend a treatment program offered by the approved treatment providers, accept responsibility for his offense, submit to polygraph examinations, and follow whatever conditions of treatment the treatment providers dictated. Gross argues that he is not

9

challenging the constitutionality of the parole condition that he undergo sex offender treatment. Rather, he asserts the focus of his complaint is that he had a protected liberty interest in being able to participate in this treatment, and that the State Defendants violated his due process rights by arbitrarily delegating the duty to treat him to treatment providers who could arbitrarily determine whether to accept him for treatment or to terminate him. *See* Opening Br. at 14-15. This alleged injury, however, was clear at the time Gross was released on parole in August of 2008 and 2009, when he knew the treatment providers could dictate the terms of his treatment and knew he was required to follow those conditions or have his parole revoked. Gross knew or should have known then that the State Defendants had delegated authority to the treatment providers to dictate the terms of his treatment, which would include terminating him from treatment, or refusing to accept him for treatment based on their own determination that he was not suitable for the treatment they offered. The fact that the treatment providers ultimately refused to enroll or re-enroll him was merely a consequence of the stated terms of his parole. The April 2011 revocation decision was not a separate and distinct constitutional injury, but simply a direct consequence of the 2008 and 2009 parole conditions. As in *Smith*, "the constitutional injury . . . which trigger[ed] the statute of limitations for purposes of § 1983, occurred when [the terms and conditions of Gross's parole were imposed], not when the consequence of that constitutional injury . . . manifested itself." 149 F.3d at 1154. Thus, we conclude that all of Gross's claims against the State Defendants are time-barred.

10

B. Private Defendants

A plaintiff asserting that a private actor deprived him of a constitutional right while acting under of color of state law must rely on more than conclusory allegations to state such a cause of action, but must include in his complaint "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Gross's complaint alleged the Private Defendants violated his constitutional rights when, after the March 2011 revocation hearing, the treatment providers they operated refused to re-enroll or accept him into their programs.[3] But his complaint only made conclusory allegations that the Private Defendants were state actors simply because Colorado had contracts with the treatment providers they operated. The district court ruled there was no allegation in Gross's complaint that any decision by the Private Defendants related to Gross's admission into a treatment program was an exercise of any right or privilege created by the state, or that the state in any way dictated any decision by the treatment providers whether to accept Gross for treatment. Thus, it ruled Gross failed to satisfy the essential § 1983 requirement that a defendant be acting under color of state law.

---

[3] In particular, he contends that Davis and Simon declined to accept him for treatment in retaliation for Gross's First Amendment activities challenging the terms and conditions of his parole. In addition to asserting they were not acting under color of state law, the Private Defendants also moved to dismiss on the ground that Gross failed to allege a cognizable First Amendment violation. Because we agree Gross failed to allege facts showing the Private Defendants acted under color of state law, we need not address these alternative grounds for dismissal.

11

On appeal, Gross argues he alleged sufficient facts to show the Private Defendants were acting under color of state law.  He cites to his allegations that the treatment providers operated by the Private Defendants had contracts with the State of Colorado to provide sex offender treatment to parolees, and to his assertion that the State delegated parole revocation authority to those treatment providers because they could reject a referred parolee for treatment.  These allegations are insufficient to show the Private Defendants acted under color of state law.

For a deprivation of a constitutional right to be committed under color of law for purposes of § 1983, it "must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible," and "the party charged with the deprivation must be a person who may fairly be said to be a state actor."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).  "[M]erely private conduct, no matter how discriminatory or wrongful," cannot provide the grounds for a claim brought under § 1983. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation marks omitted).

The Tenth Circuit has set forth four tests under which a private actor may be held accountable as a state actor for a constitutional deprivation:  (1) the nexus test, (2) the public function test, (3) the joint action test, and (4) the symbiotic relationship test.  *See Gallagher v. "Neil Young Freedom Concert*," 49 F.3d 1442, 1447 (10th Cir. 1995) (citations and quotations omitted).  Delegation of authority to a private actor is insufficient to create state action under § 1983 without meeting one of these tests.

12

*Wittner v. Banner Health*, 720 F.3d 770, 780 (10th Cir. 2013). Gross argues only that he alleged sufficient facts to show the actions of the Private Defendants met the public function test. The facts alleged in his complaint do not satisfy any of the tests.

A nexus exists only when a state has exercised "coercive power" over the challenged activity. *Id*. at 775. Gross did not allege any facts to suggest the State exercised any such coercive power over the Private Defendants' treatment decisions with respect to Gross. "The 'public function' test asks whether the challenged action is a traditional and exclusive function of the state" and looks at whether the services provided by the defendants—here, sex offender treatment and therapy—are traditional and exclusive functions of the state. *See id*. at 776-77. Gross did not assert any facts or cite any authority indicating that operating a sex offender treatment program is a traditional and exclusive function of the state.

The "joint action" test asks "whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Id*. at 777 (internal quotation marks omitted). Gross did not allege any facts suggesting the State Defendants conspired with or acted jointly with the Private Defendants in making any decision not to admit him into their treatment programs. "Action taken by private entities with the mere approval or acquiescence of the State is not state action." *Id*. (internal quotation marks and bracket omitted). Finally, the "symbiotic relationship" test asks if the state "has so far insinuated itself into a position of interdependence with a private party [that] it must be recognized as a joint participant in the challenged activity." *Id*. (internal quotation marks omitted). The "mere

13

private purchase of contract services" or "[p]ayments under government contracts . . . are insufficient to establish a symbiotic relationship between the government and a private entity." *Id.* at 778 (internal quotation marks and brackets omitted). In summary, then, Gross failed to state a claim that the Private Defendants were state actors for purposes of § 1983.

The judgment of the district court is affirmed.

Entered for the Court


Jerome A. Holmes
Circuit Judge

14